414 A.2d 388

**COMMONWEALTH of Pennsylvania,**

**v.**

**David SCOTT, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 28, 1979.

Filed Nov. 16, 1979.

Reconsideration Denied Feb. 13, 1980.

546

Raymond J. Takiff, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Division, Philadelphia, for Commonwealth, Appellee.

Before HOFFMAN, EAGEN and HESS, JJ.*

PER CURIAM:

On June 7, 1973, appellant, David Scott, entered a plea of guilty to charges against him in connection with the murder of his wife. At that time, Scott's counsel stated the plea agreement for the record to the effect that, if Scott pled guilty to murder generally, the Commonwealth would certify that the crime rose no higher than murder of the second degree and would recommend that the sentence be eight to twenty years, and further, that, "if after the plea has been taken it is determined by the State Psychiatric System that Mr. Scott is in need of additional treatment, that then instead of his being incarcerated in a prison, that he would be sent to a mental institution. . . ."

Following the June 7 proceeding, Scott was examined by a court-appointed psychiatrist. Since the court could not ascertain from the psychiatric report whether hospitalization or incarceration was recommended, it directed the doctor to provide a specific recommendation on sentencing.

On September 25, 1973, Scott again pled guilty, and a full guilty plea colloquy took place before the court accepted the plea and found Scott guilty of murder of the second degree.** At that time, Scott's counsel again stated the plea

* Chief Justice MICHAEL J. EAGEN of the Supreme Court of Pennsylvania, and Judge WARREN K. HESS of the Court of Common Pleas of Berks County, Pennsylvania, are sitting by designation.

** The notes of testimony from the June 7, 1973, proceeding did not disclose the factual basis for the plea or indicate that the plea was

agreement for the record which reads, in pertinent part " . . . that [the Commonwealth] will recommend to Your Honor that the sentence will be one of eight to twenty years, in a state mental institution, if after a psychiatric evaluation is performed the consensus of the psychiatrists is that the defendant should spend his time in a mental institution, as opposed to a correctional facility." The court explained that it was not bound by the agreement but stated that the bargain seemed reasonable and that it would probably be followed. Nevertheless, Scott was advised that if, after hearing the facts, the court could not abide by the agreement, he would be permitted to withdraw his plea of guilty.

At the sentencing hearing which followed, the Commonwealth presented an updated psychiatric report which indicated that Scott was not in need of hospitalization and recommended that any sentence imposed should be served in a state correctional institution. Thereafter, the court sentenced Scott to eight to twenty years imprisonment with the proviso that, if it was later determined that he would benefit from psychiatric care, he should be transferred to an appropriate institution to receive that care.

On June 27, 1975, Scott's petition under the Post Conviction Hearing Act, January 25, 1966, P.L. (1965) 1580, § 1 *et seq.*, 19 P.S. § 1180–1 *et seq.* (Supp.1979–80), in which he attacked the validity of his guilty plea, was denied following an evidentiary hearing. He appealed, and on January 28, 1977, the Supreme Court remanded to permit the filing of post-trial motions *nunc pro tunc.* These motions were filed and later denied by the trial court. This appeal from the judgment of sentence followed.

■ Scott advances three arguments. First, he asserts he was was incompetent to enter a plea of guilty since, at the time it was entered, he was on medication. The test for determining a defendant's mental competency to enter a guilty plea is whether he had sufficient ability at the perti-

accepted. In order to make an accurate record, the court held a completely new hearing on September 25, 1973.

nent time to consult with counsel with a reasonable degree of rational understanding, and have as a rational, as well as a factual understanding of the proceedings against him. *Commonwealth v. Marshall,* 454 Pa. 413, 312 A.2d 6 (1973); *Commonwealth v. McNeill,* 453 Pa. 102, 305 A.2d 51 (1973).

▪ Prior to trial, Scott underwent a psychiatric examination and was found competent to stand trial. Before entering a plea of guilty on June 7, 1973, he participated in an extensive colloquy during which he gave responsive and intelligent answers. Further, an updated psychiatric report reported Scott was capable of understanding the nature of the proceedings against him. Another extensive colloquy was held on September 25, 1973. The record of that proceeding demonstrates Scott's rational understanding of what occurred. Finally, a third psychiatrist was appointed to examine Scott in connection with the hearing on his PCHA petition. The report of that examination stated that, at the time of his plea, Scott understood the nature of the charges against him, the maximum sentence that could be imposed, his right to be tried by a jury, and that, by pleading guilty, he was waiving his right to a jury trial. The report noted that, while Scott was taking medication at the time of the guilty plea (50 mg. Eviril and 50 mg. Benadryl at bedtime), that medication would not have affected his ability to understand what occurred during the proceeding. We conclude the record establishes Scott's competence to enter a plea of guilty.

▪ Next, Scott argues his guilty plea was invalid since he did not obtain the benefit of his plea bargain. This claim is also without merit. The bargain, as stated on the record, was that, if Scott entered a plea of guilty, the Commonwealth would recommend a term of incarceration of eight to twenty years at either a correctional or a mental institution, which was to be determined following further psychiatric evaluation. The court abided by the agreement when it sentenced Scott to eight to twenty years imprisonment following receipt of an updated psychiatric report which recommended his incarceration in a state correctional facility.

■ Moreover, the court advised Scott of his right to withdraw the plea if the recommendation was not followed. After sentencing Scott was given an opportunity to speak, and he did ask for clarification of the sentence, but he did not indicate a desire to withdraw the plea. While Scott was undoubtedly disappointed with the psychiatrist's recommendation and the subsequent sentence of the court, this is not a proper ground for invalidating his guilty plea. *Commonwealth v. Waddy*, 463 Pa. 426, 345 A.2d 179 (1975); *Commonwealth v. Sanutti*, 454 Pa. 344, 312 A.2d 42 (1973).

Finally, Scott argues the plea was invalid because: (1) the court failed to inform him of his right to participate in the selection of a jury; (2) the court incorrectly advised him that, by pleading guilty, he was waiving his right to cross-examine witnesses against him; and, (3) the Commonwealth failed to establish a factual basis for the plea.

■ The first issue, regarding Scott's understanding of the process of jury selection, has been waived since it was not raised in post-verdict motions prior to the evidentiary hearing. Consequently, it cannot be raised in this appeal. See *Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977).

■ As to Scott's second allegation of error, it is clear that the court's statement of the law was made in contemplation of the agreement by counsel that the factual basis for the plea would be established by stipulation. Thus, the court properly informed Scott that no cross-examination would occur. Since defense counsel did agree to the facts as presented by the Commonwealth, this issue is of no consequence.

■ Scott's third allegation is also without merit. He claims a factual basis for the plea was not established since the stipulation to the medical examiner's testimony as to cause of death did not specifically state that the determination was within "reasonable medical certitude." There is no requirement that a medical report state explicitly that its opinion is within "reasonable medical certitude." This quali-

552

fication was clearly implied in the medical examiner's report. *Cf. Commonwealth v. Hamilton*, 459 Pa. 304, 311, 329 A.2d 212 (1974).

Judgment of sentence affirmed.