501 A.2d 200

COMMONWEALTH of Pennsylvania, Appellee,

v.

John Charles LESKO, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 16, 1985.

Decided Nov. 12, 1985.

68

Rabe F. Marsh, III (court-appointed), Greensburg, Welsh S. White, Pittsburgh, for appellant.

John J. Driscoll, Dist. Atty., John W. Peck, Greensburg, for appellee.

Before NIX, C.J., and LARSEN, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

John Charles Lesko, appellant, appealed to us a Westmoreland County Common Pleas order denying his petition for post-conviction relief from that court's death sentence without a hearing. After filing his appeal in this Court, he asked us to transfer the record to Superior Court, claiming that we lacked initial appellate jurisdiction over post-conviction appeals in capital cases. On the merits, asserting breach of a plea bargain, he contends Westmoreland County Common Pleas erred in holding that his right to withdraw his guilty plea to a related murder had been finally determined against him by us in *Commonwealth v. Lesko*, 502 Pa. 511, 467 A.2d 307 (1982), on direct appeal from the Court of Common Pleas of Indiana County, the court with initial jurisdiction over that related murder. He also contends that he has been denied adequate appellate review on the proportionality of his sentence and that the trial judge's

instructions to the Westmoreland County sentencing jury not to be swayed by sympathy for either his victim or appellant himself violated the requirement of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1977), that an "individualized decision is essential in capital cases" because "the uniqueness of the individual is far more important than in non-capital cases." 438 U.S. 586, 605, 98 S.Ct. 2954, 2965.

We now hold that under the present version of our Post-Conviction Hearing Act, Act of May 13, 1982, P.L. 417, 42 Pa.C.S. § 9541–9551, appeals of Common Pleas decisions are within Superior Court's jurisdiction, and that this method of appeal is not in conflict with either Section 722 of the Judicial Code, 42 Pa.C.S. § 722, relating to our jurisdiction on direct appeals from Common Pleas, or Section 9711(h) of the Sentencing Code, 42 Pa.C.S. § 9711(h), relating to our automatic review of death sentences. Nevertheless, because of the uncertainty surrounding this jurisdictional issue of first impression, its importance in the administration of our death penalty act and the uncertainties further delay would impose in this case, we will accept appellant's appeal and, instead of transferring it to Superior Court pursuant to 42 Pa.C.S. § 5103(a), retain jurisdiction here under 42 Pa.C.S. § 726. Since we have already decided all the issues raised in this collateral proceeding against appellant in either his direct appeal from his Westmoreland County conviction and sentence [1] or his appeal from the Indiana County Common Pleas' denial of his petition to withdraw his guilty plea to the murder of William Nicholls,[2] and no extraordinary circumstances have been averred or found by us, the issues appellant raises on this appeal are unavailable to him as grounds for post-conviction relief under Section 9544 of the Post-Conviction Hearing Act, 42 Pa.C.S. § 9544. We therefore rule against him on the

1. Appellant's direct appeal was consolidated with that of his co-defendant and is reported at *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1982).

2. *See Commonwealth v. Lesko,* 502 Pa. 511, 467 A.2d 307 (1982).

merits. Having so ruled, and having thoroughly reviewed all aspects of the record relating to his conviction and sentence in his direct appeals, we affirm Common Pleas.

After a Westmoreland County jury found appellant guilty of murder in the first degree in the ambush killing of police officer Leonard Miller, the Commonwealth called the District Attorney of Indiana County as a witness in the sentencing phase to show that appellant had entered a guilty plea to second degree murder in Indiana County Common Pleas to the killing of William Nicholls in that county after Nicholls had been abducted and robbed. This testimony was presented to establish one of the aggravating circumstances which our death penalty statute permits a jury to consider in deciding whether a person which it has found guilty of first degree murder should be sentenced to death or life imprisonment. The particular aggravating circumstance as to which appellant's Indiana County plea was relevant is Section 9711(d)(10) of the Sentencing Code, 42 Pa.C.S. § 9711(d)(10), a conviction of "another ... offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable...." Murder in the second degree, felony murder, here based on the robbery of Nicholls, is a crime for which a sentence of life imprisonment is mandatory. Section 1102 of the Crimes Code, 18 Pa.C.S. § 1102. The record in the guilt phase of appellant's trial for the killing of Miller in Westmoreland County shows, independently of the testimony of the Indiana District Attorney and the records he identified at the sentencing phase, that appellant and others had abducted Nicholls in Nicholls's own car in Allegheny County and forced him to drive with them out of town, after appellant's Westmoreland County co-defendant, Michael Travaglia, had shot Nicholls in the arm. Abusing Nicholls along the way, they went to a lake in Indiana County, where they bound and gagged Nicholls and weighted him with rocks. So trussed and weighted, they carried him to the lake, broke the ice on it and threw him into water over his head. Still in Nicholls's car, with his belongings

and a gun which connected them to another killing which occurred within a week of the killings of Nicholls and Miller and to a series of robberies of convenience stores in Indiana and Westmoreland Counties within the same time frame, appellant and his accomplice encountered Officer Miller, enticed him into a chase, pulled over and killed him as he approached their stopped vehicle.

This Court provided appellant with the automatic review which the law requires of us in capital cases in his direct appeal from his conviction and death sentence in the killing of Officer Miller. That review is mandatory under Section 9711(h) of the Sentencing Code, 42 Pa.C.S. § 9711(h).[3]

The jurisdictional basis for the automatic review required by Section 9711(h) of the Sentencing Code is provided by Section 722(4) of the Judicial Code, 42 Pa.C.S. § 722(4). Section 722 gives this Court "exclusive jurisdiction of appeals from final orders of the courts of common pleas" in certain specified classes of cases. Subsection (4) includes in those classes "[a]utomatic review of sentences as provided by 42 Pa.C.S. § 9711(h) (relating to review of death sentence)."

Prior to the Act of September 23, 1980, P.L. 686, No. 137, § 1, effective November 22, 1980 (Act 137 of 1980), Section 722 of the Judicial Code included among the classes of cases

**3.** The Sentencing Code provides in pertinent part:
(h) Review of death sentence.—
(1) A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules.
(2) In addition to its authority to correct errors at trial, the Supreme Court shall either affirm the sentence of death or vacate the sentence of death and remand for the imposition of a life imprisonment sentence.
(3) The Supreme Court shall affirm the sentence of death unless it determines that:
(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;
(ii) the evidence fails to support the finding of an aggravating circumstance specified in subsection (d); or
(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.
42 Pa.C.S. § 9711(h).

within our exclusive jurisdiction, under the former version of its subsection (1), "Felonious homicide."

In *Commonwealth v. Fauntroy*, 475 Pa. 287, 380 A.2d 357 (1977), we had interpreted Section 202 of our repealed Appellate Court Jurisdiction Act,[4] which was identical in language with the former version of Section 722(1) of the Judicial Code, as giving us exclusive jurisdiction not only of direct appeals in cases of felonious homicide, but also of appeals in post-conviction proceedings concerning them.

However, Section 722(1) of the Judicial Code now grants us exclusive jurisdiction only over "matters prescribed by general rule." Judicial power over collateral post-conviction review of criminal proceedings was specifically granted by the legislature under the Act of December 20, 1982, P.L. 1409, No. 326, Art. II, § 201, effective February 18, 1983; 42 Pa.C.S. § 9501. It provides:

§ 9501. Procedures, motions and other matters.

Except as otherwise provided by this chapter all post-trial procedures, motions and other matters relating to any criminal proceeding shall be conducted in the manner, at the times, on the terms and conditions and in the form prescribed by general rules.

Rules implementing this statute have been adopted as Chapter 1500 of our Rules of Criminal Procedure, Pa.R. Crim.P. 1501–1507. Rule 1507 expressly suspends the Post-Conviction Hearing Act of 1982, 42 Pa.C.S. § 9541–9551, insofar as it is inconsistent with the rules. Neither the rules themselves nor the 1982 Post-Conviction Hearing Act expressly provide for appellate jurisdiction.

However, Section 742 of the Judicial Code, 42 Pa.C.S. § 742, relating to appeals from courts of common pleas in cases not entrusted to us provides:

§ 742. Appeals from courts of common pleas.

The Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of

---

4. Act of July 31, 1970, P.L. 673, art. II, § 202, formerly 17 P.S. § 211.202.

common pleas, regardless of the nature of the controversy or the amount involved, except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court.

Act No. 137 of 1980, which amended Section 722 of the Judicial Code into its present form, had as a prime purpose relieving this Court of the burden of dealing with all appeals in cases of felonious homicide, including the repeated appeals such cases often generated under the Post-Conviction Hearing Act and converted this Court into one with primarily discretionary appellate jurisdiction. It had as its prime mover former Chief Justice Michael Eagan, who labored intensely in educating the bar, the public and the legislature on the adverse effect the burden of often frivolous appeals and reappeals was having on our ability to discharge our administrative and supervisory powers as governing authority of the unified judicial system, along with our rule making function and our prime judicial duty of clearly and carefully delineating the law of this Commonwealth in areas of general import in which its meaning or application was in dispute. Recognizing the increased burden the removal of these and other matters from our jurisdiction would have on Superior Court, the legislature had passed the Act of June 11, 1980, P.L. 213, No. 63, 42 Pa.C.S. § 541, increasing the size of Superior Court from seven to fifteen members. In Act 137, the legislature was also careful to rewrite Section 722(4) of the Judicial Code to insure by explicit requirement that an automatic, searching and independent review of all death sentences would be available in this Court on a mandatory basis, in accordance with Section 9711(h) of the Sentencing Code. As stated, this appellant has had such a review.

■ For us to conclude that either this appellant, others sentenced to death or the Commonwealth itself have a right to appeal to us final orders of the courts of common pleas in collateral attacks on death sentences by post-conviction proceedings would not, to our mind, further the legislative

purpose in passing the 1980 amendments to both the Judicial Code and the Post-Conviction Hearing Act. The development of any issues appropriately raised on collateral attack is, we believe, better left to the normal appellate process under Section 742 of the Judicial Code. In that manner, attempts to relitigate questions we have already decided can be screened and new or unseen issues not finally litigated or waived fully explored. When such new issues arise, which should rarely occur because of the broad and searching review we make on direct appeal, they can be considered in this Court on petition of either party, addressed to our discretionary jurisdiction under Section 724 of the Judicial Code. Thus, any significant issue of statewide import can be fully considered here on a discretionary basis. The remedies available under the Post-Conviction Hearing Act are derivative of those available under the ancient writ of habeas corpus. That writ was always available in the lower courts. We therefore see no anomaly in permitting them to consider, in the first instance, whether collateral relief is available under Section 9543 of the Post-Conviction Hearing Act, 42 Pa.C.S. § 9543.[5] Those few capital cases which involve issues which we have not considered and which, therefore, remain open under the Act, are subject to the normal process of full appellate review in Superior Court and discretionary review here.

Considering the legislative history and purpose behind Act No. 137 of 1980, which included the amendment to Section 722 of the Judicial Code deleting the category of felonious homicides from our exclusive appellate jurisdiction, and the fact that we have not utilized the present version of § 722(1) to adopt a general rule providing for our exclusive jurisdiction in collateral attacks on death sentences, we conclude that they are not normally within it, but instead encompassed within the appellate jurisdiction of Superior Court under Section 742 of the Judicial Code, as appeals "from final orders of the courts of common pleas,

5. Section 9543 sets forth the substantive bases for post-conviction relief.

... [not] within the exclusive [appellate] jurisdiction of the Supreme Court or the Commonwealth Court."

However, because the appropriate resolution of this appellate jurisdiction issue is a matter of first impression which was not free of doubt, appellant's initial action in filing his appeal from the denial of post-conviction relief with us was not unreasonable. In dealing with it, we have had the benefit of full briefing and argument on the issues he raises on the merits. Therefore, in this particular case, it seems to us that a transfer back to Superior Court without a decision on the merits would be a wasteful use of judicial resources and only serve to prolong the cruel apprehension which the repeated appeals and delays of our legal system imposes. Both the convicted murderer and society have a right to a thoughtful, but reasonably prompt, disposition of these cases. With those thoughts in mind, exercising the power the legislature has given us in Section 726 of the Judicial Code, we deny appellant's application to transfer this particular case.

Proceeding to a consideration of the merits of this appeal, we agree with the Westmoreland County Court of Common Pleas that appellant's petition for post-conviction relief must be denied. Our Post-Conviction Hearing Act provides: "To be eligible for relief under [it], a person ... must prove ... (4) That the error resulting in his conviction and sentence has not been finally litigated or waived." 42 Pa.C.S. § 9543(4).

With respect to hearings, it specifically states:

§ 9549. Hearing on petition.

. . . .

(b) When not required.—The court may deny a hearing if the petitioner's claim is patently frivolous and is without a trace of support either in the record or from other evidence submitted by the petitioner. The court may also deny a hearing on a specific question of fact when a full and fair evidentiary hearing upon that question was held at the original trial or at any later proceeding.

42 Pa.C.S. § 9549(b).[6] The Post-Conviction Hearing Act further provides: "... an issue is finally litigated if: ... (3) The Supreme Court has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(3). We have so ruled on two of the three issues raised by appellant. The remaining issue, involving *Lockett v. Ohio, supra,* if not finally determined, was waived under Section 9544(b) of the Post-Conviction Hearing Act, 42 Pa.C.S. § 9544(b).

In *Commonwealth v. Travaglia,* 502 Pa. 474, 503, 467 A.2d 288, 303 (1983), we addressed the proportionality issue as required by our death penalty statute, Section 9711(h)(3)(iii) of the Sentencing Code, 42 Pa.C.S. § 9711(h)(3)(iii), and expressly held the imposition of the death sentence upon appellant was not excessive or disproportionate. In that connection, we said:

> We have searched the records of these cases available to this Court for information as to the character of the defendants (e.g. intelligence, family background, psychiatric history, previous criminal record), and the circumstances, both aggravating and mitigating, of their crimes. We find that the sentence of death is not excessive or disproportionate to the penalty imposed in these similar cases.

502 Pa. at 505, 467 A.2d at 304.

Appellant attempts to avoid this holding with the argument that we failed to consider the fact that his co-defendant, Travaglia, was the trigger man in the killing of Officer Miller and that the imposition of a death sentence on appellant, as a mere accomplice, would be disproportionate. This is merely a different way of raising the proportionality issue. As such, it does not avoid our final holding that the death penalty imposed on him was neither "excessive or disproportionate." *See Commonwealth v. Wilson,* 452 Pa. 376, 305 A.2d 9 (1973). Besides, his argument implies that imposition of a death sentence on the killer precludes the imposition of the same penalty on any of his

---

6. Pa.R.Crim.P. 1504, relating to summary dispositions without the appointment of counsel is consonant with this section.

accomplices. We have already rejected the argument that a death sentence for a co-defendant who did not do the actual killing is disproportionate when the killer himself received a sentence of imprisonment. *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984). We would therefore reject appellant's argument on the proportionality issue even if our holding on direct appeal and the statute itself did not preclude it as a ground for relief in this collateral proceeding.

Appellant's argument that the trial court erred in its instruction to the jury to disregard sympathy[7] was not directly dealt with in our opinion on his direct appeal.[8] Nevertheless, it was available to him and no extraordinary circumstances are referred to which would justify his not raising it then. *See* Section 9544(b)(2) of the Post-Conviction Hearing Act, 42 Pa.C.S. § 9544(b)(2); *Commonwealth v. Pfaff*, 496 Pa. 572, 437 A.2d 1188 (1981). Moreover, *Lockett v. Ohio, supra*, on which he relies, had already been decided. Therefore, he cannot claim "[t]he abridgement ... of ... a right that was not recognized as existing at the time of the trial if the constitution requires retrospective application of that right." Section 9543(3)(xii) of the Post-Conviction Hearing Act, 42 Pa.C.S. § 9543(3)(xii). The Act provides in this respect:

**7.** The charge in this regard was as follows:

Now, the verdict is for you, members of the jury. Remember and consider all of the evidence, giving it the weight to which you deem it is entitled. Your decision should not be based on sympathy, because sympathy could improperly sway you into one decision— into a decision imposing the death sentence, or could improperly sway you against the decision of imposing the death sentence. There is sympathy on both sides of that issue. Sympathy is not an aggravating circumstance; it is not a mitigating circumstance. N.T. January 31, 1981, Sentencing Hearing at 1706.

**8.** An analogous issue, raised in connection with his claim of prosecutorial misconduct, was dealt with and rejected when we stated:

It is clear from reading this argument as a whole that the prosecutor was seeking to remind the jury that sympathy was not a proper consideration, but that if they were inclined to be sympathetic they should temper their sympathy .... This was not an improper argument for the prosecutor to have made. *Commonwealth v. Travaglia*, 502 Pa. at 501, 467 A.2d at 301.

§ 9544. When an issue is finally litigated or waived.

. . . .

(b) Issued waived.—For the purposes of this subchapter, an issue is waived if:

(1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted or in a prior proceeding actually initiated under this subchapter.

(2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue.

(c) Presumption.—There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

42 Pa.C.S. § 9544(b) and (c). Appellant makes no assertion of ineffectiveness nor of any other extraordinary circumstance which would justify present consideration of this issue. Indeed, counsel at oral argument both here and on direct appeal expressly disclaimed any charge of ineffectiveness. The record indicates such a contention would be difficult to sustain under the standards of ineffectiveness set out either in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), or *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). *See Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1982). We would therefore be justified in holding this issue was waived. However, rather than relying on either waiver or analogy, we will treat it on the merits, as a new argument. So treated, we reject it for the following reasons.

Read as a whole, the trial judge's charge fully and fairly presented to the jury its duty to consider and weigh the aggravating factors which accompanied this killing against all mitigating factors, including the broad mitigation provision of Section 9711(e) of the Sentencing Code, 42 Pa.C.S. § 9711(e)(8). That section provides that "[m]itigating cir-

cumstances shall include the following: ... (8) [a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." 42 Pa.C.S. § 9711(e)(8). This last mitigating factor constituted the legislative response to our decision in *Commonwealth v. Moody*, 476 Pa. 223, 382 A.2d 442 (1977), holding a former version of the death penalty statute unconstitutional on reasoning analogous to *Lockett.*

■ We believe that the presentation of that mitigating factor to the jury as part of the trial judge's charge,[9] satisfies *Lockett.* We have carefully reviewed the opinions of the California Supreme Court with respect to this issue in *People v. Lanphear*, 36 Cal.3d 163, 680 P.2d 1081, 203 Cal.Rptr. 122 (1984), and *People v. Easley*, 34 Cal.3d 858, 671 P.2d 813, 196 Cal.Rptr. 309 (1983), and find them unpersuasive.

Appellant's main argument is that the use of his Indiana County guilty plea to second degree murder for the killing of Nicholls as an aggravating circumstance in the killing of Officer Miller violated the plea bargain on which it was based. That issue was also determined adversely to him in his appeal from the denial of his petition to withdraw the Indiana County guilty plea. *Commonwealth v. Lesko*, 502 Pa. 511, 467 A.2d 307 (1983). Again, his present argument is a variant on the same issue, as considered in that case. In it, we held that the fact he had not yet been sentenced for the Nicholls murder did not preclude use of his guilty plea as evidence of the aggravating circumstance defined at Section 9711(d)(10) of the Sentencing Code, 42 Pa.C.S. § 9711(d)(10), in the Miller killing and that his counsel was not ineffective in permitting him to enter it. There we said:

In the lower court opinion, the trial judge found that 'the evidence established: that the defendant entered his plea of guilty to second degree murder upon agreement of the Commonwealth to delay sentencing as a deliberate choice of trial strategy in an effort to prevent evidence of his criminal acts in Indiana County from being considered

9. *See* N.T. January 31, 1981 Sentencing Hearing at 1704.

as an aggravating circumstance during his first degree murder trial for killing a Westmoreland County police officer.' (R. 51). The Appellant agrees with this finding and now argues that his trial counsel was ineffective for persuading him to plead guilty in that trial counsel's conception of the use of this plea in the Westmoreland County case was in error. Because it appears that the action of the Appellant's trial counsel was a calculated attempt to avoid the use of any Indiana County conviction in the Westmoreland County case as an aggravating circumstance, trial counsel cannot be deemed to be ineffective.

. . . .

. . . . It was hoped that by following this course, the Westmoreland County judge would disallow the Indiana County guilty plea from being introduced in the penal phase of the trial as an aggravating circumstance, because no sentence had been imposed in Indiana County. However, the Westmoreland County trial judge correctly determined that the plea was admissible. Although trial counsel's strategy failed, he cannot be deemed ineffective. Having determined that trial counsel's actions were reasonable and designed to protect the Appellant's interests, it is clear that these actions cannot be deemed ineffective.

502 Pa. at 514–16, 467 A.2d at 308–10 (footnotes omitted).

Appellant now argues that this holding is not a final determination of the issue because he "believed" the terms of the bargain would preclude use of the Nicholls killing as an aggravating circumstance at the sentencing phase of his trial for the murder of Officer Miller. In the words of his counsel at the hearing on the petition to withdraw, he claims there was an "implicit" condition that the plea would not be used against him in the upcoming Westmoreland County trial.

The bargain, which was recorded as part of the transcript on the guilty plea, includes no such condition.

THE COURT: Now, Mr. Armstrong, has there been a plea bargain in this case?

MR. ARMSTRONG: Yes.

THE COURT: Would you tell me what it is?

MR. ARMSTRONG: Yes. At No. 35, the Commonwealth has agreed to dismiss the complicity charges. And also under # 63 Crim. 1980, has agreed to dismiss the robbery and under # 64 Crim. 1980, they have agreed to dismiss the robbery charges.

THE COURT: In other words, all of the charges at # 63 and # 64 Crim. 1980, would be dismissed and the complicity charge at # 35 Crim. 1980, would be dismissed upon the [Appellant's] agreement to enter a plea of guilty to murder of the second degree?

MR. ARMSTRONG: Yes. And also that the sentencing would be passed in late June.

THE COURT: And these robbery charges at # 63 and # 64 Crim. 1980, and the complicity charge at # 35 Crim. 1980, would be nol prossed just before sentencing; is that correct?

MR. ARMSTRONG: That is my understanding.

MR. MARTIN: That is correct, your Honor.

BY THE COURT:

Q. All right. Have you understood the conversation between your attorney and the District Attorney and myself?

A. Yes.

Q. In other words, you're promising to enter a plea of guilty to murder of the second degree which carries a penalty of life imprisonment and in exchange to that the Commonwealth agrees to drop all of the charges of # 63 Crim. 1980 and # 64 Crim. 1980 and also the complicity charge at # 35 Crim. 1980, and that would be done at the time of sentencing. And sentencing is not to take place until the end of June or later; is that correct?

MR. ARMSTRONG: We had talked about late June, your Honor, but the date wasn't set.

BY THE COURT:

Q. Do you understand that?

A. Yes.

Q. And is that your understanding of the agreement?

A. Yes.

N.T. May 19, 1980 at 31–33. At sentencing, this bargain was fully kept, as shown by the judgment of sentence.[10]

The guilty plea itself was accompanied by an extensive colloquy at a hearing which required 40 pages to record. In it, the presiding judge painstakingly explained to appellant all of his rights, inquired exhaustively into the factual basis for the plea and the terms of the plea bargain. Nowhere is there any objective hint of an agreement that this plea would not be used in evidence if relevant. Appellant's counsel in those proceedings did not deny this. He said only that such a condition was "implicit." At the hearing on the petition to withdraw it, the District Attorney expressly denied any such implicit agreement. He said:

BY MR. MARTIN:

Q. Now, are you familiar with the plea negotiations which took place before and on May 19, 1980?

A. I am.

10. At sentencing, the court ordered:
AND NOW, June 22, 1981, the defendant having entered a plea of guilty to the offense of criminal homicide classified as murder in the second degree, the sentence being mandated by statute to life imprisonment, the defendant is sentenced as follows:
That he pay the costs of the prosecution in the amount of two hundred eighty-three dollars and sixty cents [$283.60]; that he shall pay a fine to the Commonwealth of Pennsylvania for the use of Indiana County in the amount of one hundred dollars [$100]; and that he shall undergo imprisonment for the remainder of his natural life in a state correctional institution. For purposes of this sentence he shall be transported by the Sheriff of Indiana County to the Western Diagnostic and Classification Center located at the State Correctional Institution in Pittsburgh, Pennsylvania.
Credit is to be given on this sentence for any time served by the defendant John Charles Lesko because of this offense.
N.T. June 22, 1981 at 4–5.

Q. What is your understanding of that plea arrangement?

A. My understanding of the arrangement is this that the Commonwealth agreed to nol pros a complicity charge, to nol pros the robbery charges in return for a plea of guilty to murder in the second degree. On the day of sentencing Mr. Armstrong approached me and it is my recollection that he asked me if sentencing could be deferred until after the Miller trial in Westmoreland County. I didn't object to that.

Q. Why?

A. There were two reasons. First, I knew that a plea of murder in the second degree would carry a mandatory life sentence and second I also knew that Mr. Lesko was incarcerated awaiting trials in both counties, Indiana and Westmoreland, and I believe that he would remain incarcerated and there wasn't a matter of any consequence to me when he was sentenced in Indiana County since he was going to remain in jail.

. . . .

Q. Now, was there any expressed promise made by you or anyone in the District Attorney's Office that this plea that was entered in Indiana County would not be used in Westmoreland County or any other county?

A. There was no discussion at all concerning the use of this plea in any other county and there was certainly no promise from me whether it would or would not be used.

N.T. April 28, 1981 at 37–38, 39–40. On cross-examination, the Indiana County District Attorney again denied any implicit understanding.

All of appellant's rights were fully protected in connection with the entry of this plea. The record on the petition to withdraw it fully supports the court's refusal to do so. We affirmed that refusal on direct appeal. The terms of the bargain do not contain the agreement appellant now says he "believed" was "implicit" in it. In this connection, the Indiana County Court of Common Pleas said:

The defendant's argument that this explicit promise by the Commonwealth carried with it an implied promise of later non-use of the plea in other trials is without merit in view of the fact that if the defendant had intended non-use of his plea to be central to his bargain he would have made it part of the bargain. *Commonwealth v. Scott,* Pa.Super., [271 Pa.Super. 545] 414 A.2d 388, at 390 (1979); *United States v. Miller,* 565 F.2d 1273, at 1275 (3rd. Cir.1977).

Common Pleas slip op. at 7–8.

■ We agree with that statement. Indeed, in dealing with the finality of this issue, we can do no better than to quote the reasons given by Judge Early of the Indiana County Court of Common Pleas in his opinion denying appellant's petition to withdraw this guilty plea.

The instant case points to the basic problem of the entire criminal justice system, i.e., the problem that no case is ever finally resolved. The liberal allowance of withdrawals of pleas of guilty for less than significant reasons amounting to manifest injustice permits criminal defendants to manipulate the courts at the cost of public trust and great financial expense to the taxpayer. In addition, a plea colloquy adhering to the criteria of our statutes and case law renders the reasons for liberally allowing withdrawal of pleas by defendants nugatory because the very purpose of such plea colloquys is to assure that the defendant enters his plea knowingly, voluntarily, and intelligently. *Commonwealth v. Sutton,* 474 Pa. 582, 379 A.2d 107 (1977); *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, at 1632 [52 L.Ed.2d 136] (1977).

. . . .

The plea is conducted in open court where the defendant is assisted by his attorney and where the Court conducts an extensive give and take with the defendant, who is under oath, . . . . The defendant is provided with a detailed explanation of the elements of each crime charged. In addition, he is apprised of his right to file posttrial motions and that his right to appeal will be

limited if he enters a plea of guilty. He is asked about any plea bargain, the bargain is reviewed, and the defendant is informed that if a breach of the bargain occurs he may withdraw his plea; he is further informed of the maximum limits of any sentence that may be imposed on him by virtue of his plea regarding incarceration and fines. The defendant is then cautioned to listen to the prosecutions' [sic] factual basis for the charges against him and informed that he may challenge any fact recited by the prosecution that he does not agree with.

In the instant case, the Court complied with all of these criteria and on numerous occasions the [appellant] admitted in open court under oath that he understood that by his plea he was admitting that in the course of a robbery of his victim he intentionally bound the victim, kicked the ice loose from the surface of the dam and tossed in the victim, leaving him to drown. Plea colloquy, at 27, at 32–33, at 34, at 38, at 39–40.

Common Pleas slip op. at 13–15.

Affirmed.

PAPADAKOS, J., files a concurring opinion in which McDERMOTT, J., joins.

FLAHERTY, J., did not participate in the consideration or decision of this case.

PAPADAKOS, Justice, concurring.

I join in the reasoning and mandate of the Majority but write separately to express my belief that appeals of Common Pleas decisions in petitions filed under the Post-Conviction Hearing Act in death penalty cases are within our exclusive jurisdiction as part of the automatic review of death sentences imposed upon us by the legislature in Section 9711(h) of the Sentencing Code, 42 Pa.C.S. § 9711(h).

McDERMOTT, J., joins in this concurring opinion.

ORDER

PER CURIAM:

AND NOW, this 12th day of November, 1985, in view of appellant's right to file an application for reargument, Pa.R. A.P. 2541 *et seq.*, execution of sentence is stayed pending the filing and consideration of the application for reargument.