[Crim. No. 22458. June 4, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD EUGENE LANPHEAR, Defendant and Appellant.

[Crim. No. 22916. June 4, 1984.]

In re RONALD EUGENE LANPHEAR on Habeas Corpus.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Supreme Court, Edward H. Schulman and Therene Powell, Deputy State Public Defenders, for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, A. Wells Petersen, Jay M. Bloom, Keith I. Motley, John W. Carney and Harley D. Mayfield, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GRODIN, J.**—Defendant appeals from a judgment entered on a jury verdict imposing the penalty of death. This appeal is automatic. (Pen. Code,

§ 1239, subd. (b).) At a prior trial defendant was convicted and sentenced to death for murder with special circumstances in that the murder was willful, deliberate, and premeditated, and personally committed during the commission of a robbery (former Pen. Code, § 190.2, subd. (c)(3)(i)) and the jury fixed the penalty at death. On appeal this court reversed the judgment as to penalty only. (*People* v. *Lanphear* (1980) 26 Cal.3d 814 [163 Cal.Rptr. 601, 608 P.2d 689].)

In this appeal, which we have consolidated with a petition for writ of habeas corpus in which defendant challenges only the instant penalty trial, several claims of error are made. ▮▮▮ We need consider only one — that the judgment must be reversed because of an erroneous jury instruction not to consider sympathy. In this respect the instruction and potential prejudice are indistinguishable from *People* v. *Easley* (1983) 34 Cal.3d 858 [196 Cal.Rptr. 309, 671 P.2d 813], which controls this appeal and compels reversal of the judgment.

In introductory remarks to the prospective jurors during the voir dire, the court said: "You will be instructed over and over again that *you are not to base your decision in this matter on sympathy for the defendant* or sympathy for the victim. You are not to base your decision on passion or prejudice or public opinion or public feeling." (Italics added.) Later, following the completion of testimony and closing arguments, the court commenced its charge to the jury with CALJIC No. 1.00, which included this admonition: "As jurors, *you must not be influenced by pity for a defendant* or by prejudice against him. *You must not be swayed by mere sentiment, conjecture, sympathy,* passion, prejudice, public opinion, or public feeling." (Italics added.) As we concluded in *Easley,* federal constitutional law forbids an instruction which denies a capital defendant the right to have the jury consider any "sympathy factor" raised by the evidence when determining the appropriate penalty. (34 Cal.3d 858, 876.) The trial court erred, therefore, in instructing in the language of CALJIC No. 1.00 in this penalty trial.

The People contend that any prejudicial effect of these instructions was dispelled by (1) the instruction, given as part of former CALJIC No. 8.88.1 (1978) (predecessor of CALJIC No. 8.84.1) that in determining the penalty, the jury should "consider all the evidence which has been received during the trial" and (2) the following special instructions which were given at the request of defendant:

"Aggravating circumstances are circumstances attending the commission of the crime which increases [*sic*] its guilt or enormity, or adds [*sic*] to its injurious consequences, but which is [*sic*] above and beyond the essential constituents of the crime itself. [¶] Mitigating circumstances are circum-

stances that do not constitute a justification or excuse of the offense in question, but which, in *fairness and mercy,* must be considered in extenuating or reducing the degree of moral culpability. [¶] In deciding whether the Defendant should be sentenced to death or to life in prison without the possibility of parole, you must weigh the mitigating circumstances against the aggravating circumstances that you find to be established by the evidence." (Italics added.)

We rejected a similar argument in *Easley* where the same instruction that sympathy should not influence the verdict was given, pointing out that under controlling federal precedent instructions must eliminate " 'any legitimate basis for finding ambiguity concerning the factors actually considered by [the sentencing body in imposing a judgment of death].' " (34 Cal.3d 858, 879.) Here, as in *Easley,* the jury was not instructed that it could consider any aspect of the defendant's character or background in determining whether death was the appropriate penalty. Rather the extenuation instructions given suggested that only circumstances that lessen moral culpability are to be considered. That error was compounded by the repeated admonition that the jury should not be influenced by pity or sympathy for the defendant.

Sympathy is not itself a mitigating "factor" or "circumstance," but an emotion. Recognition that a jury's exercise of sentencing discretion in a capital case may be influenced by a sympathetic response to mitigating evidence is entirely consistent with that observation. The jury is permitted to consider mitigating evidence relating to the defendant's character and background precisely because that evidence may arouse "sympathy" or "compassion" for the defendant.

Using the term "sympathy factor" in *Easley* and in *People v. Robertson* (1982) 33 Cal.3d 21, 58 [188 Cal.Rptr. 77, 655 P.2d 279], as a shorthand reference to the range of mitigating factors or circumstances which the jury must be permitted to consider, we explained that both California precedent and controlling decisions of the United States Supreme Court not only permit, but mandate freedom on the part of the jury to act on the basis of sympathy or compassion when that sympathy is a reaction to evidence regarding the defendant's character or background. That evidence, as distinguished from mitigating circumstances related to the offense itself, may not reduce culpability, but it must nonetheless be considered by the jury. (*Eddings v. Oklahoma* (1982) 455 U.S. 104, 113-115 [71 L.Ed.2d 1, 10-11, 102 S.Ct. 869].) It necessarily follows that the jury must be free to respond to it.

*Eddings* and *Lockett v. Ohio* (1978) 438 U.S. 586 [57 L.Ed.2d 973, 98 S.Ct. 2954] "make it clear that in a capital case the defendant is constitu-

tionally entitled to have the sentencing body consider any 'sympathy' factor raised by the evidence before it. As the plurality opinion in *Woodson* v. *North Carolina* (1976) 428 U.S. 280, 304 [49 L.Ed.2d 944, 961, 96 S.Ct. 2978], emphasized: 'A process that accords no significance to relevant facets of the character and record of the individual offender or the circumstances of the particular offense *excludes from consideration in fixing the ultimate punishment of death the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind . . . .* [I]n capital cases the fundamental respect for humanity underlying the Eighth Amendment [citation] requires consideration of the character and record of the individual offender and the circumstances of the particular offense *as a constitutionally indispensible part of the process of inflicting the penalty of death.*' (Italics added.) . . . 'It is not only appropriate, but necessary, that the jury weigh the sympathetic elements of defendant's background against those that may offend the conscience.' " (*People* v. *Robertson, supra,* 33 Cal.3d 21, 58.)

■    As these cases make clear, the jury is obliged to weigh mitigating evidence against aggravating evidence in exercising its sentencing discretion. Although the law seeks to ensure that this discretion is not exercised arbitrarily, i.e., without regard to the evidence, the weighing process is not mechanical. If a mitigating circumstance or an aspect of the defendant's background or his character called to the attention of the jury by the evidence or its observation of the defendant arouses sympathy or compassion such as to persuade the jury that death is not the appropriate penalty, the jury may act in response thereto and opt instead for life without possibility of parole.

This constitutionally mandated freedom to respond to sympathy aroused by mitigating evidence in no way overlooks sympathy that the jury may feel for the victim. It would be surprising if a jury were not sympathetic toward the victim of a homicide. However, if the mitigating evidence does give rise to compassion for the defendant the jury may reject death as the penalty. Sympathy for the victim and compassion for the defendant are not mutually exclusive emotions.

■    The instructions in this case did not make clear to the jury its option to reject death if the evidence aroused sympathy or compassion. The instructions were inconsistent and ambiguous in advising both that the jury must not be swayed by pity or influenced by sympathy for the defendant, and that it should consider circumstances which "in fairness and mercy, must be considered in extenuating or reducing the degree of moral culpability." Because they also failed to tell the jury that any aspect of the defendant's character or background could be considered mitigating and could be a basis

for rejecting death even though it did not necessarily lessen culpability, the instructions were constitutionally inadequate.[1]

The People argue that these defects were not prejudicial. We cannot make such a determination in this case. The defendant presented evidence regarding his background and circumstances which could have been considered by the jury as demonstrating redeeming features of his character or as factors warranting sympathy. That evidence showed that defendant was raised by his father who left defendant's mother when defendant was three because he did not want to be tied down to a woman who had cancer. Defendant's mother died six years later. A step-mother whom defendant's father married when defendant was four was a domineering woman with whom defendant did not have a close relationship. The parents fought. Defendant obeyed neither and was whipped for his misdeeds. After leaving home at age 16, defendant maintained a close relationship with a half-sister.

Evidence was also offered that defendant had a loving relationship for four years with the mother of his son, during which time he was gainfully employed and was like a father to the son of his companion. Defendant's son, eight at the time of the trial, was devoted to his father, wrote to him once a month, and spoke with him by telephone. Defendant's criminal activity began after the separation of the couple. There was evidence that defendant was hurt and discouraged when his "wife" left him for someone else, and that he became dependent upon alcohol.

By offering the evidence about his relationship with his son defendant hoped for a sympathetic reaction by the jury. His counsel expressed that hope in his closing argument.[2] After referring to this relationship and to evidence that persons close to defendant wanted him to live, counsel also argued that "a little mercy and a little compassion" on the part of the jury

---

[1]The vice in the instructions given is not that the jury must be free to make its penalty decision on the basis of "factually untethered sympathy." A capital sentencing scheme that did not require the sentencing authority to consider both aggravating and mitigating factors might well be condemned as violative of the requirement that the discretion of a capital jury be "guided discretion." (See *Woodson* v. *North Carolina* (1976) 428 U.S. 280, 303 [49 L.Ed.2d 944, 960, 96 S.Ct. 2978]; *Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420 [134 Cal.Rptr. 650, 556 P.2d 1101].) Rather, the instructions suggest to the jury that mitigating evidence relevant to the defendant's background and character, which may give rise to sympathy, is not entitled to the same consideration in weighing mitigating against aggravating factors as evidence that extenuates moral culpability. As the Supreme Court made clear in *Zant* v. *Stephens* (1983) 462 U.S. 862, 879 [77 L.Ed.2d 235, 251, 103 S.Ct. 2733], although it is not essential that a state adopt standards by which a jury is to weigh aggravating against mitigating factors "[w]hat is important . . . is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime."

[2]With regard to the evidence of that relationship, counsel commented: "I didn't bring up the existence of Trevor Lanphear to invoke sympathy, per se, although if that happened, I'm not opposed to it."

would not be misconstrued as approval of his crimes. These considerations were irrelevant to defendant's culpability for the murder of which he had been convicted. As evidence of defendant's background and character the evidence was relevant only to whether death was an appropriate penalty for this individual notwithstanding his culpability in the commission of the murder.

However, the instructions which followed this argument told the jury that it must not act on the basis of sympathy, and directed the jury to consider evidence that in fairness and mercy extenuated or reduced moral culpability. It cannot be determined whether the jury understood it was free to consider the evidence offered by defendant in mitigation in determining whether death was the appropriate penalty for this defendant based upon his individual characteristics *and* notwithstanding the degree of his culpability for the offense.

Retrial of the penalty phase is therefore constitutionally mandated. As we have noted, we may not affirm a judgment of death in the face of ambiguity which may have misled the jury as to its proper function. The instructions here were ambiguous, inconsistent, and inadequate both in their description of the evidence that the jury must consider and in their advice regarding the extent of the jury's discretionary power in imposing the appropriate penalty. We cannot, therefore, either by presuming that the jury followed the instructions of the court or by reference to any other matters in the record, satisfy ourselves that the jury actually considered the evidence of defendant's character. The resultant ambiguity precludes a conclusion that the instructional error was harmless.

The judgment is reversed. The petition for writ of habeas corpus is dismissed as moot.

Bird, C. J., Kaus, J., Broussard, J., and Reynoso, J., concurred.

**MOSK, J.**—I dissent.

Two juries have considered the penalty phase of this defendant's capital case and both reached the same result. After the first jury verdict this court found "overwhelming evidence" in support of defendant's guilt (*People* v. *Lanphear* (1980) 26 Cal.3d 814, 837 [163 Cal.Rptr. 601, 608 P.2d 689]) but reversed the penalty under compulsion of *Witherspoon* v. *Illinois* (1968) 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770]. Now a majority of this court propose yet another reversal, this time in misguided reliance on a palpably erroneous theory advanced by the majority in *People* v. *Easley* (1983) 34 Cal.3d 858 [196 Cal.Rptr. 309, 671 P.2d 813].

Where my colleagues go wrong is in their conclusion that elimination of sympathy as a factor somehow prevents the jury from weighing mitigating circumstances. Nothing could be further from reality. The jurors were instructed by the court to "consider all the evidence which has been received during the trial," and they were further advised specifically to weigh the aggravating *and mitigating circumstances* "that you find to be established by the evidence."

The defendant presented all the evidence he could muster regarding his unfortunate background and certain purported redeeming qualities of character. Those were *his* mitigating circumstances. Sympathy, on the other hand, is not a characteristic of the defendant; it is an emotion of the *jurors*. Thus, when jurors were cautioned not to be swayed by sympathy, they were not being instructed to ignore thoughtful and dispassionate consideration of the defendant's proffered mitigation. They were merely admonished to employ reason, not emotion. That is sound advice in a court of law. Justice Cardozo reminded us: "The balance is swayed, not by gusts of fancy, but by reason." (Cardozo, Growth of the Law (1924) p. 58.)

What my learned colleagues fail to comprehend is that if jurors are permitted—indeed, encouraged—to entertain emotion in assessing penalty, in most instances they are likely to order death for the miscreant. I continue to adhere to the views expressed in my dissent in *People v. Bandhauer* (1970) 1 Cal.3d 609, 619 [83 Cal.Rptr. 184, 463 P.2d 408], and in my dissent in *People v. Easley, supra,* 34 Cal.3d at page 886: "In the current climate of public opinion, sympathy is more likely to be aroused for the victim and his family than for a defendant who has been found guilty of a brutal first degree murder. Thus cautioning a jury in the penalty phase of the trial not to be swayed by mere sympathy redounds to the benefit, not the detriment, of the defendant."

The majority lean on a thin reed to reverse a second jury's determination of what it believes to be the appropriate penalty in this case. To now require a third replay of the same theme offends the "miscarriage of justice" clause of the California Constitution (Cal. Const., art. VI, § 13).

Respondent's petition for a rehearing was denied July 12, 1984. Mosk, J., and Lucas, J., were of the opinion that the petition should be granted.