[No. S004424, Crim. No. 22501. July 11, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERT GREENWOOD BROWN, JR., Defendant and Appellant.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Supreme Court, Monica Knox, Chief Assistant State Public Defender, Robert Scarlett, Steven W. Parnes and Donald L. A. Kerson, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Keith I. Motley, Jesus Rodriguez, John W. Carney, Steve Zeigen and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

EAGLESON, J.—This case, an automatic appeal, is before us on remand from the United States Supreme Court. Our original decision (hereafter *Brown I*) was filed December 5, 1985. (40 Cal.3d 512 [220 Cal.Rptr. 637, 709 P.2d 440].) A jury convicted defendant of the rape and premeditated murder of 15-year-old Susan J. Under the 1978 death penalty initiative, a rape-murder special circumstance (Pen. Code, § 190.2, subd. (a)(17)(iii))[1] was found true. After a penalty trial, the jury imposed the death sentence. This court unanimously upheld the guilt and special circumstance verdicts. However, a five-justice majority (per Grodin, J.; see also conc. opn. of Bird, C. J.) reversed the death judgment, ruling under dispositive California precedent that the penalty phase instruction to disregard sympathy (CALJIC No. 1.00) was constitutionally improper and prejudicial, and thus invalidat-

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

ed the sentence. (40 Cal.3d at pp. 521, 536-537, citing *People* v. *Easley* (1983) 34 Cal.3d 858, 875-880 [196 Cal.Rptr. 309, 671 P.2d 813], and *People* v. *Lanphear* (1984) 36 Cal.3d 163, 165-169 [203 Cal.Rptr. 122, 680 P.2d 1081].) In separate opinions, two justices dissented from the penalty reversal. (Conc. & dis. opns. of Mosk, J. and Lucas, J.)

The United States Supreme Court granted certiorari. (Cert. granted June 2, 1986, 476 U.S. 1157 [90 L.Ed.2d 717, 106 S.Ct. 2274] (Dock. No. 85-1563).) A five-justice majority ultimately concluded that California's standard-form instruction to avoid "mere sentiment, conjecture, sympathy, passion, prejudice, public opinion, or public feeling" does not violate the federal Constitution when given at the penalty phase of a capital trial. Our judgment was reversed and the cause was remanded for proceedings not inconsistent with the high court decision. (*California* v. *Brown* (1987) 479 U.S. 538, 539-543 [93 L.Ed.2d 934, 938-941 107 S.Ct. 837] (plur. opn.)], 544-546 [93 L.Ed.2d at pp. 941-943 (conc. opn. of O'Connor, J.)].) We requested supplemental briefs from the parties and set the case for argument.

While vacation of this court's "judgment" technically leaves all appellate issues at large, the federal high court did not address the guilt phase issues which were unanimously resolved against defendant in *Brown I* (40 Cal.3d at pp. 525-536). The parties have presented no new argument with respect to the guilt trial, and we find no basis for reconsidering *Brown I's* analysis of the guilt and special circumstance issues. For the reasons stated in *Brown I,* we will again affirm the convictions and the special circumstance finding.

The United States Supreme Court's rejection of this court's prior ground for reversing the penalty judgment requires us to analyze the remaining penalty issues presented by defendant. We now conclude that no error occurred warranting a new penalty trial. As will appear, however, the trial judge failed to fulfill his statutory duty to decide the automatic posttrial motion for modification of the penalty verdict. (§ 190.4, subd. (e) (hereafter § 190.4(e)).) We must therefore reverse the death judgment solely for purposes of a limited remand to allow consideration of the modification motion. (See *People* v. *Rodriguez* (1986) 42 Cal.3d 730, 792-795 [230 Cal.Rptr. 667, 726 P.2d 113].)

*1. Guilt and penalty phase evidence.*

*Brown I* sets forth in detail the evidence presented at the guilt and penalty phases of defendant's trial. (40 Cal.3d at pp. 522-525.) We briefly review the facts pertinent to the penalty issues now before us.

Overwhelming evidence establishes that on the morning of October 28, 1980, as Susan J. walked past a Riverside orange grove on her way to

school, defendant waylaid, raped, and murdered her. During the evening of October 28, someone who the evidence indicates was defendant made several taunting telephone calls to both Susan's parents and the police. The caller claimed Susan would never be seen alive again and gave clues to the whereabouts of her body and of certain items she had been carrying. Guided by the calls, the police found the body late on the evening of October 28. It was lying face-down, with dirt piled up around the head. The cause of death was strangulation. There were signs of a struggle, and a lace from one of Susan's shoes was wrapped tightly around her neck. Defendant presented an alibi defense through his mother but did not testify in his own behalf at the guilt trial.

"[In its case in chief at] the penalty phase, the prosecution presented evidence of defendant's 1977 rape of 14-year-old Kelly P. [The victim's testimony indicated that defendant entered her home, threw a jacket over her head as she emerged from the shower, and choked her when she tried to escape.] Defendant pled guilty to the rape and was sentenced to state prison. He was released in June 1980 on one year's parole.

"The defense presented psychiatric and background evidence suggesting that defendant[, though he was legally sane and had no organic brain damage,] suffered severe emotional problems, including extreme sexual maladjustment and dysfunction. [A defense psychiatrist, Dr. Summerour, indicated that defendant's history of violent sexual misconduct stemmed from a deep family-induced fear of normal physical relations with women. Dr. Summerour opined that defendant killed Susan out of shame for raping her, and that the body's face-down position suggested defendant's inability to confront his victim. In the psychiatrist's view, defendant's subsequent telephone calls also indicated shame and a desire to be caught. Dr. Summerour urged that defendant was not violent by nature, was dangerous only to women, and thus would not be a problem in custody.] Numerous relatives testified [that defendant had a kind, nonviolent nature and] to their affection for [him. They pled for his life. On cross-examination, defendant's father conceded defendant's various youthful scrapes with the law, including at least one Marine Corps court martial and apparent convictions for trespass and a misdemeanor sex offense.] Defendant himself took the stand, expressed remorse for his rape of Kelly P., and asked the jury to show mercy." (*Brown I,* 40 Cal.3d at p. 525.)

2. *Was the jury prejudicially misinformed about the relevant scope of mitigating evidence ?*

*Brown I* held that where defendant offers substantial mitigating evidence of his character and background, but the jury is told only that it may weigh

in mitigation evidence which extenuates the severity of the capital crime itself, a penalty phase "antisympathy" instruction impermissibly interferes with the sentencer's constitutional duty to consider all "sympathetic" evidence defendant proffers in behalf of a penalty less than death. (40 Cal.3d at pp. 536-537; see, e.g., *Eddings* v. *Oklahoma* (1982) 455 U.S. 104, 110-115 [71 L.Ed.2d 1, 8-11, 102 S.Ct. 869], and conc. opn. of O'Connor, J., at pp. 117-119 [71 L.Ed.2d at pp.12-14].) On certiorari, the United States Supreme Court reversed, ruling that the Eighth and Fourteenth Amendments do not forbid California's "antisympathy" instruction at the penalty phase of a capital trial. (*California* v. *Brown, supra,* 479 U.S. 538 [93 L.Ed.2d 934].)

The lead opinion, by Chief Justice Rehnquist, reasoned that the Eighth Amendment requires *guided* sentencing discretion and thus precludes penalty judgments not based on the evidence. The opinion concluded that the challenged instruction, which warns against "*mere* sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling" (italics added), can reasonably be understood only as a proper admonition to avoid considerations "totally divorced from the evidence adduced during the penalty phase." (*Id.,* at pp. 541-543 [93 L.Ed.2d at pp. 939-941].)

Justice O'Connor joined the judgment and the lead opinion, supplying the crucial fifth vote for reversal, but only with an important proviso. In a separate concurrence, she noted that "[t]his case squarely presents the [long-existing] tension" between two Eighth Amendment capital-sentencing precepts—"guided" sentencing discretion, on the one hand, and, on the other, the sentencer's opportunity to consider "*any* relevant mitigating evidence" about the offense *and the offender*. (479 U.S. at p. 544 [93 L.Ed.2d at pp. 941-942]; italics added.) The purpose of such mitigating evidence, she suggested, is not to produce simply an emotional response, but a *moral* one; hence, as the majority suggested, a warning against "mere" sympathy is not in and of itself improper.

However, Justice O'Connor pointed out, neither the 1978 death penalty law nor the standard instructions given at defendant's penalty trial expressly provide that the sentencer must consider general character and background evidence in mitigation of penalty. She noted that the only instruction at defendant's penalty trial which might suggest the relevance of "nonstatutory" mitigating factors was the "unadorned factor (k) instruction," which speaks only of circumstances which "[extenuate] the gravity *of the crime*." (§ 190.3, factor (k); CALJIC, former No. 8.84.1, factor (k), italics added.)

Moreover, Justice O'Connor observed, the prosecutor "may" have argued that the jury should ignore mitigating evidence about the defendant's

character and background. "In combination with the instructions, the comments of the prosecutor may create a 'legitimate basis for finding ambiguity concerning the factors actually considered by the' jury. [( ]*Eddings* v[.] *Oklahoma, supra,* [455 U.S.] at [p.] 119, . . . (O'Connor, J. concurring) [ )]"[2]

"I concur in the judgment and opinion," said Justice O'Connor, "[b]ecause it is open to the California Supreme Court to determine on remand whether the jury was adequately informed of its obligation to consider all [proffered] mitigating evidence . . . ." In making that determination, she indicated, we "should [decide] whether the jury instructions, taken as a whole, and considered in combination with the prosecutor's closing argument," provided adequate information on the relevant scope of mitigating evidence. (479 U.S. at pp. 544-546 [93 L.Ed.2d at pp. 941-943].)

In light of the remand, and closely tracking Justice O'Connor's concurring language, we requested the parties to address in supplemental briefing (1) whether the instructions and the prosecutor's argument, taken as a whole, adequately informed the jury of the evidence it must consider, (2) whether defense counsel's argument may also be considered in deciding whether the jury was adequately informed, and (3) if the jury received inadequate information, what standard of reversible prejudice should apply.

The People contend at the outset that the O'Connor "gloss" on the United States Supreme Court's remand order is not dispositive, since the views of a single justice are not those of a quorum. The Supreme Court majority has told us, the People imply, that the instant jury was *not* misled for federal constitutional purposes about the evidence or considerations bearing on penalty choice.

---

[2] Under the 1978 statute, the jury is informed that it shall consider, to the extent applicable, the specific aggravating and mitigating circumstances set forth in the statute, and that it "shall" determine the appropriate penalty by "weighing" the enumerated aggravating and mitigating circumstances. with the exception of factor (k), the enumerated factors are expressly limited to (1) circumstances surrounding the capital crime itself and (2) the defendant's criminal history. (§ 190.3; CALJIC, Nos. 8.84.1, 8.84.2; cf. *Hitchcock* v. *Dugger* (1987) 481 U.S. __ [95 L.Ed.2d 347, 353, 107 S.Ct. 1821] [death sentence invalid where advisory jury was instructed, and sentencing judge believed, they could only consider such "non-factor (k)" statutory circumstances].) Therefore, in *Easley, supra,* we found that an instruction in the "unadorned" language of factor (k) created a "potential" for "misunderstanding" similar to that noted by Justice O'Connor. We directed that capital sentencers henceforth be informed, in the factor (k) instruction, that they may consider in mitigation not only any circumstance which "extenuates the gravity of the crime," but "any other 'aspect of [the] defendant's character or record . . . that the defendant proffers as a basis for a sentence less than death. . . .'" (34 Cal.3d at p. 878, fn. 10, quoting *Lockett* v. *Ohio* (1978) 438 U.S. 586, 604 [57 L.Ed.2d 973, 990, 98 S.Ct. 2954].) No such expanded instruction was given in this pre-*Easley* trial.

However, Justice O'Connor made clear she would not have provided the crucial majority vote except upon her understanding that we must evaluate anew whether the instructions and argument provided adequate information. Moreover, as we recently observed, "A majority of the justices of the United States Supreme Court, upon reviewing our [*Brown I*] decision, stressed the necessity of analyzing the record in each case to determine whether the jury instructions, taken as a whole, and read in conjunction with the prosecutor's arguments, adequately informed the jury of its responsibility to consider all of the mitigating evidence in the case. (See *California v. Brown* [, *supra,*] 479 U.S. 538, 546 [93 L.Ed.2d 934, 943, 107 S.Ct. 837, 842] (conc. opn. by O'Connor, J.), 561 [93 L.Ed.2d at p. 943, 107 S.Ct. at p. 842] (dis. opn. by Brennan, J.), 547 [93 L.Ed.2d at p. 952, 107 S.Ct. at p. 850] (dis. opn. by Blackmun, J.).) . . . ." (*People* v. *Ghent* (1987) 43 Cal.3d 739, 777 [239 Cal.Rptr. 82, 739 P.2d 1250]; see also *People* v. *Miranda* (1987) 44 Cal.3d 57, 103 [241 Cal.Rptr. 594, 744 P.2d 1127].) We are routinely undertaking such analyses in cases pending after the decision in *California* v. *Brown.*

■   Defendant contends that defense counsel's argument is irrelevant to the determination whether the jury was adequately informed. He urges the well-settled principle that the comments of the accused's attorney cannot cure crucial omissions from the instructions. (E.g., *Carter* v. *Kentucky* (1981) 450 U.S. 288, 304 [67 L.Ed.2d 241, 253, 101 S.Ct. 1112] [Fifth Amendment privilege not to testify]; *Taylor* v. *Kentucky* (1978) 436 U.S. 478, 488-489 [56 L.Ed.2d 468, 477, 98 S.Ct. 1930] [presumption of innocence; proof beyond reasonable doubt]; *People* v. *Vann* (1974) 12 Cal.3d 220, 227, fn. 6 [115 Cal.Rptr. 352, 524 P.2d 824] [same].)

This analysis misconceives the nature of the factor (k)/sympathy problem. In *Easley, supra,* we acknowledged that the "unadorned factor (k)" instruction might be "*potentially* confusing" (italics added); we ordered *prospective* clarification "to avoid *potential* misunderstanding in the future" (italics added). (34 Cal.3d at p. 878, & fn. 10.) In *Brown I,* we found reversible error when the "unadorned factor (k)" instruction was *combined* with a penalty phase "antisympathy" instruction (40 Cal.3d at pp. 536-537), but we specifically declined to hold that all pre-*Easley* cases—including those in which no "antisympathy" warning was given—are reversible merely because instructions in those trials included no factor (k) clarification. Rather, we said, "[e]ach such prior case must be examined *on its own merits* to determine whether, *in context,* the sentencer may have been misled . . . ." (*Id.,* at p. 544, fn. 17, italics added; but see *People* v. *Davenport* (1985) 41 Cal.3d 247, 282-284 [221 Cal.Rptr. 794, 710 P.2d 861] [plur. opn.], 295 [conc. opn. of Broussard, J.].) The subsequent high court opinions in *California* v. *Brown, supra,* make clear that such a case-by-case analysis is

appropriate *even where* "unadorned factor (k)" and "antisympathy" instructions are combined.

The compelling implication of these prior decisions is that instructions such as those given here are not crucially erroneous, deficient, or misleading on their face, but may become so in particular circumstances. (See, e.g., *Ghent, supra,* 43 Cal.3d at p. 777.) When the issue is not whether erroneous instructions have been cured by argument, but whether the interplay of argument with individually proper instructions produced a distorted meaning, it seems appropriate to evaluate the remarks of both counsel to determine whether the jury received adequate information. We have so assumed in several opinions since *California* v. *Brown.* (*People* v. *Odle* (1988) 45 Cal.3d 386, 418-419, 420-421 [247 Cal.Rptr. 137, 754 P.2d 184]; see *People* v. *Hamilton* (1988) 45 Cal.3d 351, 371 [247 Cal.Rptr. 31, 753 P.2d 1109]; *People* v. *Milner* (1988) 45 Cal.3d 227, 256 [246 Cal.Rptr. 713, 753 P.2d 669].)

■ Applying these principles, we conclude that the instant jury was not misinformed about the evidence and considerations properly bearing on penalty choice. The instructions, of course, did not expressly advise the jury that it could weigh in mitigation defendant's evidence about his background, character, personality, and family ties. And the jurors were formally warned not to be swayed by "mere . . . sympathy."

The prosecutor's attempt to exploit any potential ambiguity, however, was itself manifestly ambiguous. The result was an implicit concession that all the defense evidence was relevant, if not persuasive. Defense counsel provided a vigorous and able rebuttal to any contrary inferences by the prosecutor. And the penalty instructions included a general admonition to consider "all" the trial evidence. Under all the circumstances, the jurors must have understood they should take into account, for whatever it was worth, the substantial character and background evidence defendant had presented without objection.

At the outset, anticipating the antisympathy instruction, the prosecutor warned that "personal feelings of passion, prejudice, sympathy" (italics added) must be put aside. "Your verdict in this case, ladies and gentlemen," he continued, "has to be one based on the law. It is not a vote from the heart, and cannot be one. The Judge will instruct you that you must not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling[, and to reach a just verdict] regardless of what the consequences of that verdict may be."

Early in his argument, the prosecutor enumerated the statutory aggravating and mitigating factors, including the "unadorned factor (k)" language,

and admonished that "[t]hose are the factors which you are to apply, ladies and gentlemen. . . ." Later, after reviewing the evidence he deemed relevant to each other statutory factor, the prosecutor arrived again at factor (k). He noted defendant had offered no explanation, and no remorse, which might "extenuate the gravity" of the capital crime.

The prosecutor continued: "I might comment at this time regarding the other witnesses outside of Dr. Summerour called by the defense." Relatives' testimony about "what a good boy" defendant had been was not pertinent, said the prosecutor, to "any of the factors which relate to your decision in this case. . . ." Such testimony, the prosecutor asserted, was a "blatant attempt . . . to inject personal feelings in the case, to make the defendant appear human," but as the court would instruct, "you must not be swayed by sympathy."[3]

At other points, however, the prosecutor urged vigorously that defendant *deserved* no leniency in view of the seriousness of his crime. The jury should not consider "mercy" for defendant, the prosecutor suggested, since defendant showed Susan J. no "mercy." The prosecutor stressed that the victim, like defendant, had friends and family, "and they suffered." Moreover, "[t]he defendant, as I indicated before, was painted with a very human face. But you cannot ignore the human face of Susan [J.] in reaching your decision." The prosecutor further suggested that defendant's relatives, who had testified to his gentle personality as a youth, did not know his true nature.

In sum, the prosecutor pursued a double-edged strategy. He contended that the defense character and background evidence was not relevant, *but if relevant was not persuasive.* Of course, argument about weight and persuasiveness is always proper. (See, e.g., *People* v. *Allen* (1986) 42 Cal.3d 1222, 1276 [232 Cal.Rptr. 849, 729 P.2d 115] [" 'as good as nothing . . . pathetic, almost invisible mitigating evidence' "].) By including such argument here, the prosecutor openly signalled his understanding that the jurors might reject as mere advocacy his assertions about the irrelevance of sympathy and background.

---

[3] In context, the prosecutor's remarks were as follows: "[Defense counsel] brought to you in two days a parade of relatives who admitted that they were biased witnesses in the case, who told us a lot about the defendant from their point of view. They told us what a good boy he was at the time in his youth when they knew him. And he brought them gifts and that he cared after his siblings. They did not testify, ladies and gentlemen, regarding any of the factors which relate to your decision in this case. Their testimony here, ladies and gentlemen, I would suggest was a blatant attempt by the defense to inject personal feelings in the case, to make the defendant appear human, to make you feel for the defendant, and although that is admirable in the context of an advocate trying to do his job, you ladies and gentlemen must steel yourselves against those kinds of feelings in reaching a decision in this case. [¶] As the Judge will instruct you, you must not be swayed by sympathy. . . ."

If we had doubts about the jury's understanding of these ambiguous remarks, however, they would be dispelled by defense counsel's rebuttal. Counsel's argument, a passionate plea for mercy, strongly buttressed the impression that defendant's individual qualities were pertinent to the appropriate penalty. While counsel's comments focused in large part on the psychiatric evidence that defendant's crime was the result of a severe psychosexual disturbance, they also marshalled broader notions against vengeance. Counsel urged the jurors not "[t]o put on blinders, to steel your heart against all emotion, all feeling. . . . More is required of you."

Counsel stressed evidence that defendant, despite his crime, had a human soul and redeeming qualities. "The District Attorney," counsel argued, "talks about painting a human face on Albert Brown. Did you think that the love and care and concern of his family for him was false? It wasn't." Referring to evidence that defendant, while in prison, had painted a loving portrait of his brother, counsel urged, "Is someone who creates beauty all bad? Does God work in that person? Yes. The District Attorney doesn't like this picture. It shows you that Albert Brown is a human being and that he is worth saving. And you cannot deny that. That is not false. . . . It is not up to you to be the angels of death.

". . . The request for mercy, says the District Attorney, must be set aside. Why? What more awesome task can you have and what more urgent plea can I make than that there be mercy? . . ."

No objection was made to the defense evidence, or to defense counsel's comments. Moreover, as noted, the jury received a general instruction that it should consider "all of the evidence" admitted at both the guilt and penalty trials. (See *People* v. *Wade* (1988) 44 Cal.3d 975, 996 [244 Cal.Rptr. 905, 750 P.2d 794].) Though we do not approve the prosecutor's attempts to exploit the "antisympathy" and "unadorned factor (k)" instructions (compare *Wade, supra*), we conclude under all the circumstances that the jury was adequately apprised of the relevant scope of mitigating evidence.

*3. Was the jury adequately informed about the scope of its sentencing discretion?*

The 1978 death penalty law, unlike the 1977 version, provides that the sentencer "shall" impose a death sentence if it finds that aggravating factors "outweigh" mitigating. (§ 190.3.) The instant penalty jury was instructed without elaboration in this statutory language. (CALJIC, former No. 8.84.2.)

In *Brown I,* this court declared that the 1978 statute, properly construed, neither insulates the jury from ultimate sentencing responsibility nor im-

poses an invalid "mandatory" penalty formula, but gives the jury the duty and discretion, as the Eighth Amendment requires, to determine the appropriate penalty under all the relevant circumstances. (40 Cal.3d at pp. 538-544; see also *Caldwell* v. *Mississippi* (1985) 472 U.S. 320, 328-329, 340-341 [86 L.Ed.2d 231, 238-240, 246-247, 105 S.Ct. 2633].) However, *Brown I* noted potential confusion when a sentencer is instructed without further explanation in the statute's "shall/outweigh" language. The opinion called for amplified instructions in future cases. It further declared that we would examine each prior case to determine, under all the circumstances, whether the jury had been misled. (40 Cal.3d at pp. 544, fn. 17, 545, fn. 19.)[4]

█ The People devote much of their supplemental brief on this issue to a plea for reconsideration of *Brown I's* determination that the unadorned "shall/outweigh" instruction is potentially misleading. They urge that the Eighth Amendment permits statutes which require imposition of the death penalty on a properly narrowed class of murderers once the jury has determined, by its own values, that aggravating circumstances "outweigh" mitigating.

The basic contention is that "mandatory" statutes were approved in *Proffitt* v. *Florida* (1976) 428 U.S. 242 [49 L.Ed.2d 913, 96 S.Ct. 2960], and *Jurek* v. *Texas* (1976) 428 U.S. 262 [49 L.Ed.2d 929, 96 S.Ct. 2950]. Both *Jurek* and *Proffitt* were discussed in *Brown I* (40 Cal.3d at pp. 540, fn. 11, 541, fn. 12); the People tell us nothing new about those cases which would alter our understanding that a death judgment is invalid if imposed by a sentencer which has been led to believe it lacks the power and responsibility to decide for itself the appropriate individual penalty under all the relevant circumstances.[5] Moreover, while the People concede that the weighing process must be subjective, instructions in the literal statutory language

---

[4]This court conducted no such individual inquiry in *Brown I* itself, since it had already found reversible error in the antisympathy instruction. While *California* v. *Brown, supra,* disapproved *Brown I's* reasoning on the antisympathy issue, the United States Supreme Court has not addressed that portion of *Brown I* which deals with the "shall/outweigh" instruction.

[5]Neither *Jurek* nor *Proffitt* directly confronted the arguably "mandatory" nature of the schemes there at issue, nor were those cases concerned with the validity of *instructions* in the unadorned statutory language. The United States Supreme Court has sometimes included dicta suggesting that a particular state scheme has a "clean bill of health," but the danger of assuming too much from such general statements is easily demonstrated. For example, *Proffitt* includes implications that the Florida statute then in effect—which, like California's, provided that the penalty should be determined by "weighing" the aggravating and mitigating factors—included sufficient safeguards against arbitrary sentence determinations. (428 U.S. at pp. 258-260 [49 L.Ed.2d at pp. 926-927].) However, in *Hitchcock, supra,* the high court recently *disapproved* operation of the same Florida statute in a more particular way. The court found invalid a death sentence imposed by a jury which was instructed, and a judge who believed, that the relevant mitigating evidence was limited to that literally described in the statute. (481 U.S. at pp. 397-399 [95 L.Ed.2d at pp. 352-353].)

leave room for misunderstanding in precisely that respect. (See, e.g., *People v. Myers* (1987) 43 Cal.3d 250, 274 [233 Cal.Rptr. 264, 729 P.2d 698]; *Allen, supra,* 42 Cal.3d at pp. 1276-1277.) Our recent assumption has been that the *Brown I* analysis remains viable. (See, e.g., *Milner, supra,* 45 Cal.3d at pp. 253-258.)

As with factor (k)/sympathy issues, we determine from the instructions and arguments as a whole whether the jury has been adequately informed. Here, reasonable jurors could not have been left with any misunderstanding. While he recited the "shall/outweigh" test, the prosecutor stressed that "[i]t will be *your duty and your duty alone* to determine which of [the enumerated aggravating and mitigating] factors are applicable in this case, which are absent, *what weight to be given to them* . . . ." (Italics added.) He never suggested that the weighing process was mechanical, or that the "law," as opposed to the jury itself, determined the penalty choice. He emphasized that the decision was "very hard and unpleasant" and that "[b]eing judges in this case, *you make the decision* and make it unanimously. . . ." (Italics added.) Defense counsel confirmed that "[i]t is up to each of you in your hearts and your minds to decide on these factors in aggravation, factors in mitigation, and there is no one factor that outweighs the others and you are the sole individuals who are to judge as individuals which factor it is that you should listen to, what factor it is that you should not." We find no basis for reversal.

*4. Prosecutor's comment that defendant had escaped cross-examination about the current offense.*

■ At the penalty phase, defendant took the stand in his own behalf under a ruling that he could profess his innocence of the capital crime without subjecting himself to cross-examination on that issue. Asked on the stand whether he had "maintained, throughout these proceedings, [his] innocence," defendant replied, "Yes, I do." As previously noted, defendant proceeded to discuss his background, expressed remorse for the prior rape of Kelly P., and asked the jury for mercy. Twice during cross-examination, the prosecutor asked questions designed to reveal the "immunity" ruling; each time defense objections were sustained.

However, during closing argument, the prosecutor declared, "The defendant can sit in this courtroom and take the stand and testify about the details of his life and become more human to you, appear pleasant and likeable. Never once discussing the circumstances of the crime that he committed." Defendant urges this comment infringed his right against self-incrimination (see *Griffin* v. *California* (1965) 380 U.S. 609, 615 [14 L.Ed.2d 106, 110, 85 S.Ct. 1229]), violated the state rule against comment

at the penalty phase on failure to confess and express remorse (*People* v. *Coleman* (1969) 71 Cal.2d 1159, 1168-1169 [80 Cal.Rptr. 920, 459 P.2d 248]), and in any event unfairly exploited his reliance upon the trial court's immunity ruling (*Doyle* v. *Ohio* (1976) 426 U.S. 610, 618 [49 L.Ed.2d 91, 98, 96 S.Ct. 2240]; *Johnson* v. *United States* (1943) 318 U.S. 189, 197 [87 L.Ed. 704, 711-712, 63 S.Ct. 549]).

We agree with the People that the trial court's decision to limit cross-examination was incorrect. Defendant's right against self-incrimination was inapplicable, since (1) a determination of guilt had already occurred, and (2) his general denial of guilt waived any constitutional privilege against cross-examination on that issue. (See, e.g., *People* v. *Saddler* (1979) 24 Cal.3d 671, 679 [156 Cal.Rptr. 871, 597 P.2d 130].) Moreover, any general policy that defendant may testify at the penalty phase without comment upon his *failure to discuss his guilt* (see *Coleman, supra*) is inapplicable where defendant buttresses his penalty defense by *denying* his guilt. The effect of the trial court's ruling was to grant defendant a right of allocution before the penalty jury. No such right exists under California law. (See *People* v. *Robbins* (1988) *ante,* pp. 867, 888-890 [248 Cal.Rptr. 172, 755 P.2d 355].)

It does not follow, however, that the prosecutor's remark was proper. The prosecutor could not, by argument, exploit defendant's reasonable decision, in reliance on the ruling, to deny his guilt in penalty phase testimony. (*Doyle, supra;* see also Evid. Code, § 913, subd. (a).)

Nonetheless, we find no cognizable prejudice under any applicable standard of review. Similar comments at the penalty phase, when "brief and mild" as in this case, "are uniformly held to be harmless error. [Citations.]" (*Ghent, supra,* 43 Cal.3d at p. 771.)[6] And, though an admonition would have cured any impropriety, defendant raised no objection when the challenged comments were made. (See *Miranda, supra,* 44 Cal.3d at p. 108; *Ghent, supra,* 43 Cal.3d at p. 770; *People* v. *Green* (1980) 27 Cal.3d 1, 27 [164 Cal.Rptr. 1, 609 P.2d 468].) Again, no basis for reversal appears.

5. *Guilt phase testimony of victim's father.*

■ At the close of the prosecution's case at the guilt phase, the prosecutor announced his intention to call the victim's father to testify that defend-

---

[6]The import of the prosecutor's remarks was not that the jury should infer defendant's guilt because he had not discussed the "circumstances" of the capital crime. (See *Ghent, supra.*) Rather, the prosecutor appeared to be urging that defendant's "humanity" and "likeability" might have been undermined if he had been forced to confront the details of his misconduct, and that the jury should remember those details in assessing defendant's character.

ant and the victim were not married and to identify her signature in a schoolbook. Defendant offered to stipulate to both facts, but the offer was refused, and, over defendant's objection, Mr. J. was allowed to take the stand. Defendant contends it was error to permit live testimony on stipulated facts. He urges the error was prejudicial on the issue of penalty, since the father's appearance was contrived to arouse sympathy for the victim's family. (See *Booth* v. *Maryland* (1987) 482 U.S. 496, 509 [96 L.Ed.2d 440, 452, 107 S.Ct. 2529] ["victim impact statement" at penalty phase improper].)

It was error for the trial court to permit live testimony over defendant's offer to stipulate. The evidentiary matter at issue was technical and tangential, and a live witness was unnecessary to accord the prosecution " 'the legitimate force and effect of material evidence.' " (*People* v. *Hall* (1980) 28 Cal.3d 143, 152-153 [167 Cal.Rptr. 844, 616 P.2d 826]; see *Fuentes* v. *Tucker* (1947) 31 Cal.2d 1, 7 [187 P.2d 752].) One could conclude Mr. J.'s appearance was contrived primarily to arouse sympathy at the guilt phase. Yet his testimony, which was brief and undramatic, appears harmless by any standard at the penalty phase. It provides no basis for reversal of the penalty judgment.

*6. Davenport error; failure to delete inapplicable mitigating factors from instructions.*

Defendant urges that the trial court should have deleted from CALJIC No. 8.84.1 those potentially mitigating factors listed in section 190.3 which were not relevant to any evidence produced at trial. We have rejected such contentions. (*Miranda, supra,* 44 Cal.3d at pp. 104-105; *Ghent, supra,* 43 Cal.3d at pp. 776-777.)

As defendant also notes, the prosecutor argued that the absence of extreme mental or emotional disturbance would or might be a factor in aggravation. He also suggested that the absence of extreme duress or domination, or of belief in moral justification, might be aggravating factors. We have disapproved prosecutorial argument that the absence of a mitigating factor constitutes a factor in aggravation. (*Rodriguez, supra,* 42 Cal.3d at p. 789; *Davenport, supra,* 41 Cal.3d at p. 289.)

However, the comments here were harmless by any applicable standard of review. We have deemed it proper for the prosecutor merely to note the *absence* of statutory factors which might warrant leniency. (*Ghent, supra,* 43 Cal.3d at p. 771; *Rodriguez, supra,* 42 Cal.3d at pp. 789-790.) The subtle distinction between this form of argument, and that condemned in *Rodriguez* and *Davenport,* seems unlikely to have substantial effect on the jury's penalty deliberations unless the improper remarks are pronounced and

egregious. Here, they were brief, mild, tentative, and ambiguous. No basis for reversal appears.

### 7. Constitutionality of 1978 death penalty initiative.

Defendant urges that the 1978 death penalty law violates the Eighth Amendment insofar as it fails to include or require (1) specific enumeration of which factors are aggravating and which mitigating, (2) specific exclusion of nonlisted aggravating factors, (3) written findings regarding aggravating factors, (4) a prosecutorial burden of proof on aggravating factors, (5) jury unanimity on which factors make death the appropriate punishment, and (6) appellate proportionality review. We have previously rejected similar challenges to the 1978 law. (*Miranda, supra,* 44 Cal.3d at pp. 99, 107; *Allen, supra,* 42 Cal.3d at p. 1285; *Rodriguez, supra,* 42 Cal.3d at pp. 777-779.)

### 8. Trial court's failure to state reasons for denial of automatic motion to set aside death verdict.

Section 190.4(e) establishes an automatic motion to the trial court for modification of any death verdict. The trial judge must "review the evidence, consider, take into account, and be guided by the aggravating and mitigating circumstances referred to in Section 190.3, and shall make a determination as to whether the jury's findings and verdicts that the aggravating circumstances outweigh the mitigating circumstances are contrary to law or the evidence presented. *The judge shall state on the record the reasons for his findings.*" (Italics added.)

In the instant case, after hearing argument on the modification motion, the judge simply pronounced a formal death judgment. The text of the judgment did not refer to the motion for modification. The judge neither expressly disposed of the motion nor stated his reasons for denying it. Defendant urges the deficiency warrants reversal. We agree.

We have made clear the importance of the statutory requirement that the trial judge state reasons for his grant or denial of a motion under section 190.4(e). Such a statement facilitates "thoughtful and effective appellate review" (*People* v. *Frierson* (1979) 25 Cal.3d 142, 179 [158 Cal.Rptr. 281, 599 P.2d 587][1977 law]), and it focuses the trial judge himself on a critical analysis of the penalty evidence.

Here, in addition to a failure to state reasons, the record discloses an even more fundamental breach of the section 190.4(e)'s requirements for a valid death judgment. The motion for modification of verdict was never decided

on the record *at all*. Thus, the judgment of death against defendant cannot stand.

We find no error requiring retrial of the issues of guilt or penalty. However, we must reverse the penalty judgment on the basis of the section 190.4(e) error, and we do so. As in *Rodriguez,* the cause is remanded to the trial court solely for prompt consideration of the automatic motion for modification of verdict. (42 Cal.3d at pp. 794-795.)  ▪▪▪ The trial court's procedure, and the parties' appeal rights from the new judgment shall be as set forth in *Rodriguez.*[7]

Lucas, C. J., Panelli, J., Arguelles, J., and Kaufman, J., concurred.

**MOSK, J.,** Concurring and Dissenting.——I concur in the affirmance of the judgment as to guilt and in the sustaining of the special circumstance finding.

I also agree with the majority that the trial judge failed to fulfill his responsibilities under Penal Code section 190.4 when he neither expressly disposed of defendant's verdict-modification application nor stated his reasons for what must be deemed an implied denial. I also believe that he erred under that provision by failing to "make an independent determination whether imposition of the death penalty upon the defendant is proper in light of the relevant evidence and the applicable law." (*People* v. *Rodriguez* (1986) 42 Cal.3d 730, 793 [230 Cal.Rptr. 667, 726 P.2d 113].) Failure to do so, the *Rodriguez* court noted, might raise questions of federal constitutional error. (*Id.* at p. 794, citing *People* v. *Frierson* (1979) 25 Cal.3d 142, 178-179 [158 Cal.Rptr. 281, 599 P.2d 587].)

I dissent, however, from the disposition concerning the judgment as to penalty. As I shall explain, I am of the opinion that the jury was not adequately informed of its responsibility to consider all the mitigating evidence introduced by defendant, and that as a result the judgment of death should be reversed and the cause remanded for new penalty proceedings. The limited remand ordered by the majority is inadequate.

I agree with the majority that our task on remand after the United States Supreme Court reversed the judgment in *People* v. *Brown* (1985) 40 Cal.3d

---

[7] This case was tried in 1980 before Judge J. William Mortland of the Riverside County Superior Court. Judge Mortland still sits on that court, and he personally should consider the modification motion. This is the correct procedure wherever possible, but practical difficulties arise when the trial judge dies or becomes unavailable before the section 190.4(e) motion has been decided. By analogy to other similar situations, the modification motion may in such event be heard and determined by any other judge of the same court. (§ 1053 [completion of trial]; Code Civ. Proc., § 661 [new trial motion]; *People* v. *Holzer* (1972) 25 Cal.App.3d 456, 463-464 [102 Cal.Rptr. 11] [same].)

512 [220 Cal.Rptr. 637, 709 P.2d 440], in *California* v. *Brown* (1987) 479 U.S. 538 [93 L.Ed.2d 934, 107 S.Ct. 837], is defined by Justice O'Connor's concurring opinion in that decision.

"On remand, the California Supreme Court should determine whether the jury instructions, taken as a whole, and considered in combination with the prosecutor's closing argument, adequately informed the jury of its responsibility to consider all of the mitigating evidence introduced by the [defendant]. The jury was given instruction 8.84.1, 1 California Jury Instructions, Criminal (4th ed. 1979) (CALJIC), which lists the specific aggravating and mitigating factors the sentencer is to consider in determining punishment. Only one subsection of that instruction even arguably applies to the nonstatutory mitigating factors: 'Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime.' CALJIC 8.84.1(k). The [defendant] contends that the jury might have understood this instruction as mandating consideration only of mitigating evidence about the circumstances of the *crime,* and not evidence about the defendant's background and character. Moreover, in his closing remarks, the prosecutor in this case may have suggested to the jury that it must ignore the mitigating evidence about the [defendant]'s background and character. In combination with the instructions, the comments of the prosecutor may create a 'legitimate basis for finding ambiguity concerning the factors actually considered by the' jury." (*California* v. *Brown, supra,* 479 U.S. at p. 546 [93 L.Ed.2d at p. 943, 107 S.Ct. at p. 842] (conc. opn. of O'Connor, J.).)

I cannot agree with the majority that when we conduct the foregoing analysis in this case we are able to conclude that "the jury was adequately informed of its obligation to consider all of the mitigating evidence introduced by the [defendant] . . . ." (*California* v. *Brown, supra,* 479 U.S. at p. 546 [93 L.Ed.2d at p. 943, 107 S.Ct. at p. 842] (conc. opn. of O'Connor, J.).)

Construing the prosecutor's comments in their context, I find myself compelled to conclude that the jury must have understood the words in accordance with their plain meaning—to the effect that the mitigating evidence of defendant's character and background was simply immaterial. Hence, I cannot accept the majority's assertion that the prosecutor' s remarks amounted to "an implicit concession that all the defense evidence was relevant, if not persuasive." (Maj. opn., *ante,* p. 1256.)

Specifically, in commenting on CALJIC No. 8.84.1(k) the prosecutor told the jurors all but expressly that they could not consider defendant's character and background evidence. His remarks were as follows:

"Finally, ladies and gentlemen, there is the factor of other circumstances which extenuate the gravity of the crime, even though not a legal excuse, if present, it might mitigate, if absent there is no mitigation.

"There is no evidence, ladies and gentlemen, I would suggest to you, which extenuates the gravity of this crime, the killing of Susan J[.] that has been presented. No explanation, no remorse and I might comment at this time regarding the other witnesses outside of [a psychiatrist] called by the defense.

"[Defense counsel] brought to you in two days a parade of relatives who admitted that they were biased witnesses in the case, who told us a lot about the defendant from their point of view. They told us what a good boy he was at the time in his youth when they knew him. And he brought them gifts and that he cared after his siblings. *They did not testify, ladies and gentlemen, regarding any of the factors which relate to your decision in this case.* Their testimony here, ladies and gentlemen, I would suggest was a blatant attempt by the defense to inject personal feelings in the case, to make the defendant appear human, to make you feel for the defendant, and although that is admirable in the context of an advocate trying to do his job, you ladies and gentlemen must steel yourselves against those kinds of feelings in reaching a decision in this case." (Italics added.)

I recognize that in his argument defense counsel urged the jurors to consider the mitigating evidence about defendant's background and character as they chose between life and death. But account must be taken of the court's potentially misleading CALJIC No. 8.84.1(k) instruction and the prosecutor's actually misleading argument. Account must also be taken of the weight that jurors are presumed to give to the words of the trial judge (see, e.g., *People* v. *Rodriguez, supra,* 42 Cal.3d at p. 804 (dis. opn. of Mosk, J.)) and to the words of the prosecutor (see, e.g., *People* v. *Talle* (1952) 111 Cal.App.2d 650, 677 [245 P.2d 633] (per Peters, P. J.)). In view of the foregoing, I am of the opinion that defense counsel's argument would have been heard by the jury as a plea to consider evidence that it was required by law to ignore—and hence would have been rejected out of hand.

I recognize that in the instructions the jurors were told generally and without specification that they should consider "all of the evidence" admitted at both the guilt and penalty phases of the trial. But such a charge falls far short of adequately informing them that they could consider defendant's background and character evidence in mitigation of the penalty of death.

Accordingly, error of federal constitutional dimension occurred in this case. The jury was not "adequately informed . . . of its responsibility to

consider all of the mitigating evidence introduced by the [defendant]. . . . In combination with the instructions, the comments of the prosecutor . . . create a 'legitimate basis for finding ambiguity concerning the factors actually considered by the' jury." (*California* v. *Brown, supra,* 479 U.S. at p. 546 [93 L.Ed.2d at p. 943, 107 S.Ct. at p. 842] (conc. opn. of O'Connor, J.).)

On this record I cannot conclude that the error was harmless. In *Hitchcock* v. *Dugger* (1987) 481 U.S. 393, 399 [95 L.Ed.2d 347, 353, 107 S.Ct. 1821, 1824], the United States Supreme Court suggested that the kind of error under consideration here may be held nonprejudicial only when "it had no effect on the jury . . . ." (Cf. *Satterwhite* v. *Texas* (1988) 486 U.S. __, __-__ [100 L.Ed.2d 284, 108, S. Ct. 1792] (holding that errors of federal constitutional dimension occurring at the penalty phase of a capital trial are generally subject to harmless-error review under the beyond-a-reasonable-doubt test of *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].) In view of the strong mitigating evidence about defendant's background and character—including his severe emotional problems, his generally kind and nonviolent nature, and his remorse for the rape of Kelly P.—I cannot conclude, with the confidence required by the Eighth Amendment, that the error here did not contribute to the verdict.

For the foregoing reasons, I would reverse the judgment of death and remand for new penalty proceedings.

Broussard, J., concurred.

Appellant's petition for a rehearing was denied September 15, 1988. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.