[No. S020670. June 24, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LEWIS, JR., Defendant and Appellant.

## COUNSEL

Robert M. Sanger, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, John R. Gorey and Margaret E. Maxwell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN, J.**—A jury convicted defendant of the first degree murder (Pen. Code, § 187)[1] and robbery (§ 211) of Milton Estell. It found true allegations of deadly weapon use (§ 12022, subd. (b)) and personal use of a firearm (§§ 12022.5, 1203.06) as well as a special circumstance allegation that the murder was committed during the commission or attempted commission of a robbery. (§ 190.2, former subd. (a)(17)(i), now subd. (a)(17)(A).) The jury fixed the punishment at death. Although finding no other reversible error, this court vacated the judgment of death because the trial court erroneously considered a probation report in ruling on defendant's automatic application to modify the penalty. (§ 190.4, subd. (e); see *People v. Lewis* (1990) 50 Cal.3d 262, 286–287 [266 Cal.Rptr. 834, 786 P.2d 892] (*Lewis I*).) On remand, the trial court denied the application for modification and reinstated the judgment of death. This appeal is automatic. (Cal. Const., art. VI, § 11; Pen. Code, § 1239.)

We find no error in the trial court's denial of the modification application or any other rulings on remand and affirm the judgment.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Because resolution of the issues raised in this appeal depends solely on the original trial record, we cite to the factual statement set forth in *Lewis I*, *supra*, 50 Cal.3d 262:

---

[1] All undesignated statutory references are to the Penal Code.

"Guilt Phase Facts

"A. *Prosecution Case.*

"During the first three weeks of October 1983, Milton Estell had been trying to sell his 1980 Cadillac by parking it in a Long Beach shopping center affixed with a 'for sale' sign. Mr. Estell also advertised the car in a newspaper classified ad. Mr. Estell's neighbors, Michael and Allen Washington, knew that he was selling his car. On Thursday, October 27, 1983, as they were returning home about 6:30 or 7 p.m., the Washington brothers saw Mr. Estell standing on the sidewalk in front of his house, looking at the Cadillac, and talking to defendant.[2] The hood of the car was up.

"Jacqueline Estell, the victim's ex-wife, tried to telephone Mr. Estell several times between 8 and 10 p.m. on October 27, to make arrangements for him to have custody of their children for the weekend. She received no answer and continued trying to call him the next morning between 7 and 7:30. She called his employer that day (Friday, Oct. 28) and learned that he had not come to work. After further unsuccessful attempts to reach Mr. Estell, she left the children with a neighbor of Mr. Estell's and left for the weekend.

"Officer Laduca of the Long Beach Police Department went to Mr. Estell's house about 11 p.m. on October 28 because some neighbors had expressed concern. Both the front and back doors were locked, so Officer Laduca entered through an open window. A light was on in a back bedroom, but the room was empty. The door to the next bedroom was shut. As he opened the door he smelled a strong odor, which he recognized as the odor of a dead person. There was no furniture in the room, only some children's toys. Officer Laduca opened the sliding doors to a closet and found a Black male, lying on his side, obviously dead. The Black male was later identified as Mr. Estell. His hands and legs were tied together with neckties; yellow toilet paper was stuffed in his mouth and he was gagged with a necktie. There were three stab wounds in his chest and a bullet hole in his back. Two pillows were near the body; one had a contact bullet hole in it. Two knives were lying next to the body. The stab wounds were later determined to have been the cause of death.

"The victim's wallet was lying near the body; the wallet had numerous credit cards but no cash. The Cadillac was missing. There were no signs of

---

[2] Both Washington brothers were positive of their identification of defendant; each had picked his photo from a group shown to them separately on November 2, 1983.

forced entry into the house. The front door was locked from the inside with a deadbolt. The back door was locked with a standard lock, but the deadbolt was not thrown. Defendant's palm print was found in the bathroom, on the doorjamb behind the door, near the toilet paper receptacle containing yellow toilet paper. Eleven other latent prints were lifted; two prints were the victim's, and the others were never compared with those of anyone but the victim and defendant.

"Jacqueline Estell accompanied police officers to the victim's house on Monday, October 31, and found a number of things missing: a television and stand, a camera, a radio, and a cassette player. A TV Guide was lying open to the date of October 27. The next day she noticed that a gold chain and a ring were also missing. The ring was later found at the coroner's office with the victim's belongings. Mrs. Estell later identified the missing gold chain as the one that defendant had worn at the preliminary hearing.

"On November 1, 1983, two Long Beach police officers spotted the missing Cadillac parked on the street with no one in it. About 35 minutes later, defendant and a woman entered the car and drove off. The officers stopped the car, arrested the occupants, and impounded the car. Defendant was searched and found to have about $400. He gave a false name at the time of his arrest and booking.

"Defendant was taken to the police station and booked. After waiving his *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]), he was interviewed by Detective MacLyman. Defendant said that he went to look at the Cadillac on October 24 at the owner's residence. He bought it that day—October 24—for $11,000 cash, which he had carried in a brown paper bag. The owner made out the bill of sale to defendant's girlfriend because defendant did not want the car in his name. Defendant said he had won the money playing blackjack in Las Vegas. Defendant said the entire transaction took place on the front porch; he never went in the house.

"Defendant was interviewed again the next day. This time he said he had won $17,000 in Las Vegas; the day before he had said he had won $11,000. This time he said he carried the money in a white paper bag; the day before the money had been in a brown paper bag. When asked about the discrepancies, he said that Detective MacLyman must have been mistaken. Defendant continued to assert that he had bought the car on October 24, even when Detective MacLyman told him that neighbors had seen the car at the victim's residence on October 27.

"Detective MacLyman found a bill of sale in the Cadillac when he searched it at the impound lot. He also found a garage door opener in the car that opened the victim's garage door. The victim's signature on the bill of sale was later determined to be a forgery.

*"B. Defense Case.*

"Defendant's father, Robert Lewis, Sr., testified that he had registered defendant and a girl named Tuti at the Kaialoha Motel on October 24, 1983, because defendant had no identification. He had written his driver's license number and the license plate number of Milton Estell's Cadillac on the motel registration card. The manager of the motel testified that she did not remember the transaction, but she did know that she had written down the date, room number, and amount of money paid. The customer had filled out the name, address, car license number, and number of guests.

"Defendant's sister, Gladys Spillman, testified that the gold chain taken from defendant looked like the one she had purchased in January 1983 and had given to defendant.

"Defendant did not testify." (*Lewis I, supra*, 50 Cal.3d at pp. 271–274.)

"Penalty Phase Facts

*"A. Prosecution Case.*

"The only additional evidence introduced by the prosecution was defendant's stipulation that he had suffered four prior robbery convictions; two in 1977 and one each in 1972 and 1982.

*"B. Defense Case.*

"Defendant presented testimony by his sister, Rose Davidson. Miss Davidson testified that she has one other sister, Gladys Spillman, and an additional brother, Ellis Williams. Williams was currently in state prison and had been in jail a couple of other times. Their father had been in prison a number of times, and their mother had died in 1967. Miss Davidson also testified that she loves defendant and cares about what happens to him." (*Lewis I, supra*, 50 Cal.3d at p. 278.)

After hearing the penalty phase evidence, the jury returned a verdict of death. The trial court denied the automatic application for modification of the verdict (§ 190.4, subd. (e)) and imposed sentence.

On appeal, this court found no reversible error except with respect to the ruling on the application for modification:

"Defendant contends the case must be remanded for a new hearing on the application for modification of verdict because the court considered matters from the probation report that had not been presented to the jury. After hearing argument from both sides the court ruled as follows: 'Pursuant to Penal Code section 190.4, subsection (e), I have made an independent review of the evidence. I have taken into account and been guided by the aggravating and mitigating circumstances.

" 'I find that the jury's findings and verdict are according to the law and the evidence.

" 'I find that the aggravating circumstances outweigh the mitigating circumstances. My reasons for this are as follows: That this 32-year-old defendant has shown himself to be a hostile and violent man.

" 'He has been either incarcerated or on parole most of his adult life. And even before he reached adulthood he had such a severe problem in the community that Youth Authority confinement was needed. The records indicate that once before he was responsible for the death of another human being.

" 'The victim was not the defendant's enemy. He was no threat to him, but he was, rather a citizen attempting to sell a car. The community has not only suffered serious loss by reason of this poor man's death, but his children have likewise suffered a great loss. Perhaps the greatest loss of all.

" 'My perusal of the record does not reveal any significant or substantial mitigating circumstances that could possibly outweigh the aggravation involved in this case. In my view the death penalty, as recommended by the jury is appropriate.

" 'This is a case in which the victim was brutally killed in execution style in his own home during a robbery while the victim was unable to resist, and for these reasons the motion for new trial is denied.

" ' . . . .

" 'And so that the record is clear, I decline to modify the verdict of death heretofore decreed by the jury.'

"Although the court was required to read the probation report before sentencing defendant on the robbery conviction (§ 1203, subd. (b)), it should not have read and considered the probation report in ruling on the application for modification of verdict. Under section 190.4, subdivision (e), the court is directed to review the evidence presented to the jury; a probation report is not presented to the jury. (See *People* v. *Williams* (1988) 45 Cal.3d 1268, 1329 [248 Cal.Rptr. 834, 756 P.2d 221].) In capital cases where the defendant has been convicted of other offenses requiring a probation report, the preferable procedure is to defer reading the probation report until after ruling on the automatic application for modification of verdict. This will ensure that the probation report does not influence the ruling on the section 190.4, subdivision (e) motion and hence will avoid the issue raised here. The same is true of victim impact statements which are permitted by section 1191.1. Such statements are not to be considered by the court in ruling on the section 190.4, subdivision (e) motion.

"In *People* v. *Williams, supra,* 45 Cal.3d at pages 1329–1330, the court had read the probation report before ruling on the application for modification of verdict, but we assumed that it was not influenced by the report in ruling on the application. We further noted that even if the report had been considered, it did not work any prejudice to defendant. The same is not true in this case. Here, by contrast, the probation report contained prejudicial information about defendant's juvenile record and prior involvement in a homicide— information that would not otherwise have been known. Moreover, the record reveals that the court referred to this information in stating its reasons for denial of the application.

"Accordingly, we conclude that the matter must be remanded for a new hearing on the application for modification of verdict. Preferably, the trial judge, Judge Elsworth Beam, should rehear the application on the basis of the record certified to this court. If, however, he is unavailable, the matter may be heard before another judge of the same court. (See *People* v. *Sheldon* (1989) 48 Cal.3d 935, 962–963 [258 Cal.Rptr. 242, 771 P.2d 1330]; *People* v. *Brown* (1988) 45 Cal.3d 1247, 1264, fn. 7 [248 Cal.Rptr. 817, 756 P.2d 204].)" (*Lewis I, supra,* 50 Cal.3d at pp. 286–287.)

On remand, defendant filed a motion to disqualify Judge Beam from rehearing the application for modification. (See Code Civ. Proc., § 170.1, subd. (a)(5).) Judge Beam denied any basis for disqualification, but voluntarily withdrew from further proceedings. (See *id.*, § 170.3, subd. (c)(2).) Judge Richard Charvat was appointed as his replacement.

In addition to renewing his application for modification of the verdict, defendant brought various motions, generally seeking to enlarge the scope of the remand proceedings and the modification hearing. Judge Charvat denied the motions as in excess of this court's remand directive. After stating his reasons, he then denied the application for modification of the penalty verdict and pronounced judgment.

## II. DISCUSSION

### A. *Request That the Trial Court Hear Testimony*

At the hearing on the modification application, the prosecution and defense submitted by stipulation "the record of the trial, guilt and penalty phases, absent certain objections and other material which should not be relevant to the consideration today." Prior to that time, defendant had sought to present the guilt and penalty phase evidence to Judge Charvat through live testimony on the ground that he had not personally observed the witnesses testify and therefore would be unable to evaluate their credibility in reweighing the evidence. Judge Charvat declined to allow such testimony in light of the directive in *Lewis I* that he "should rehear the application on the basis of the record certified to this court." (*Lewis I, supra*, 50 Cal.3d at p. 287.)

■ We find no error in this ruling. Apart from the express terms of our opinion in *Lewis I*, both the statutory language and this court's construction of section 190.4, subdivision (e), foreclose defendant's argument that he is entitled to present live testimony under these circumstances. The statute states in part that in ruling on the modification application, the judge "shall review the evidence" and "shall make a determination as to whether the jury's findings and verdicts that the aggravating circumstances outweigh the mitigating circumstances are contrary to law or the evidence presented." (§ 190.4, subd. (e).) By definition, a re-presentation of evidence is not "the evidence presented." Even if witnesses could be confined to their previous testimony, it would be impossible to recreate precisely what the jurors heard and thus the evidence on which they based their penalty verdict.

■ In construing section 190.4, subdivision (e), this court has repeatedly emphasized that a modification application hearing "is limited to review of the *evidence that was before the jury* . . . ." (*People v. Brown* (1993) 6 Cal.4th 322, 336 [24 Cal.Rptr.2d 710, 862 P.2d 710]; see *People v. Sakarias* (2000) 22 Cal.4th 596, 648 [94 Cal.Rptr.2d 17, 995 P.2d 152]; *People v. Beeler* (1995) 9 Cal.4th 953, 1005–1006 [39 Cal.Rptr.2d 607, 891 P.2d 153]; *People v. Edwards* (1991) 54 Cal.3d 787, 847 [1 Cal.Rptr.2d 696, 819 P.2d 436].) Any attempt to recreate the evidence would conflict with this mandate.

■ While on occasion we have stated that "in determining whether in his or her independent judgment the weight of the evidence supported the verdict, the judge was required to assess the credibility of the witnesses, determine the probative force of the testimony, and weigh the evidence" (*People v. Rodriguez* (1986) 42 Cal.3d 730, 793 [230 Cal.Rptr. 667, 726 P.2d 113]), we did not intend by such language to suggest that in every case in which the original trial judge is replaced prior to a modification application, the defendant is in effect automatically entitled to a new trial because the replacement judge's ability to assess the credibility of witnesses is necessarily limited.[3] (See *People v. Espinoza* (1992) 3 Cal.4th 806, 830 [12 Cal.Rptr.2d 682, 838 P.2d 204].)

Defendant contends that regardless of statutory language or judicial interpretation, this conclusion denies him due process and a reliable penalty determination in violation of the state and federal Constitutions. We found similar arguments unpersuasive in *People v. Espinoza, supra,* 3 Cal.4th 806, where a second trial judge was substituted midway through the guilt phase evidence. (*Id.* at pp. 827–828.) "Seizing on" the above quoted passage from *People v. Rodriguez, supra,* 42 Cal.3d at page 793, the defendant "attempt[ed] to read into the statutory provision [of section 190.4, subdivision (e)] a requirement that, in ruling on a defendant's application for modification of the jury's verdict of death rendered at the penalty phase, the requisite assessment can be made only by a judge who has personally heard the testimony presented at the guilt phase." (*Espinoza,* at p. 830.)

In finding no such requirement, the court explained, "A judge ruling on an application for modification of a jury verdict of death does not make an independent and de novo penalty determination, but rather independently reweighs the aggravating and mitigating evidence to decide whether 'in the judge's independent judgment, the weight of the evidence supports the jury verdict.' [Citations.] As we have acknowledged in cases that were reversed and remanded for reconsideration of an application for modification of a death verdict, it is not always possible that the judge who conducted the

---

[3] At the very least, such a categorical rule would lend itself to abuse by encouraging defendants to seek recusal of the original trial judge on remand for rehearing of the modification application.

penalty phase in a capital case be the one to reconsider the application on remand; in that event, 'the matter may be heard before another judge of the same court.' [Citations.]" (*People v. Espinoza, supra,* 3 Cal.4th at p. 830.) Noting that the replacement judge had "reviewed the transcripts of the trial proceedings before his substitution and presided over the remainder of the guilt phase and the entire penalty phase," the court rejected the contention that he could not fully exercise his independent judgment in ruling on the modification application. (*Ibid.*)

■ We reach the same conclusion under the circumstances of this case, in which Judge Charvat fully reviewed the transcripts of both the guilt and penalty phases. As the court implied in *People v. Espinoza, supra,* 3 Cal.4th 806, when the original trial judge is unavailable, necessity requires the replacement judge to evaluate the credibility of the witnesses as best he or she can from the written record. We find no constitutional obligation to provide more. Accordingly, Judge Charvat did not err in refusing to hear live testimony before ruling on the modification application.

■ For the same reasons, we find no constitutional defect generally in a procedure that allows a judge who did not hear the actual trial testimony to rule on the modification application. Although this court and the United States Supreme Court have cited the provisions of section 190.4, subdivision (e), as an additional safeguard against arbitrary and capricious imposition of the death penalty in California (see, e.g., *People v. Frierson* (1979) 25 Cal.3d 142, 179 [158 Cal.Rptr. 281, 599 P.2d 587]; *Pulley v. Harris* (1984) 465 U.S. 37, 51–53 [79 L.Ed.2d 29, 104 S.Ct. 871]), we find no constitutional basis for a categorical rule such as defendant advocates. As this case and *People v. Espinoza, supra,* 3 Cal.4th 806, illustrate, the particular circumstances may permit a reviewing court to determine that a replacement judge's consideration of the trial transcript did not deny the defendant due process or undermine the reliability of the penalty verdict.

B. *Ruling on the Modification Application*

In addition to the foregoing question of procedure, defendant challenges the modification ruling in substance, contending the court erroneously failed to consider lingering doubt and improperly relied on aggravating evidence not supported by the record. Based on our independent review of the record (see *People v. Ashmus* (1991) 54 Cal.3d 932, 1006–1007 [2 Cal.Rptr.2d 112, 820 P.2d 214]), we find no error in the court's determination that the jury's penalty verdict was not contrary to the law or the evidence presented.

Regarding lingering doubt, the court indicated it had reviewed the trial transcript, and then recounted the salient circumstances of the killing as they

related to aggravation. It next stated, "With respect to the offense itself, there is no lingering doubt in this court's mind that the defendant is the killer of Mr. Estell. [¶] The evidence of his guilt is overwhelming and far beyond a reasonable doubt. [¶] The defendant gave inconsistent statements to the detectives regarding the incident. He denied ever being in the house. [¶] But his palm print was found near the yellow toilet paper dispenser, and that, I believe was the paper that was used for the gagging. [¶] The defendant was caught while driving the victim's car four days after the murder. [¶] There was a forged deed of sale. The defendant was also using the false name. The defendant was wearing the victim's gold chain at the preliminary hearing. [¶] In the court's view, there is no doubt as to the defendant being the killer of Mr. Estell."

Defendant argues that the omission from this recitation of evidence the defense offered in an attempt to raise a reasonable doubt—such as the fact that nine of the 12 latent prints found at the scene were never identified and his sister's testimony that she had purchased the gold chain defendant wore at the preliminary hearing—demonstrates the court did not properly consider lingering doubt. We draw no such inference from the foregoing record. (Cf. *People v. Ruiz* (1988) 44 Cal.3d 589, 625 [244 Cal.Rptr. 200, 749 P.2d 854].) In stating "there is no lingering doubt," the court plainly did consider that factor. And it was only logical to recite the evidence negating lingering doubt, since that was the court's finding. (See also *Babbitt v. Calderon* (9th Cir. 1998) 151 F.3d 1170, 1179.)

Regarding the alleged consideration of aggravating circumstances not supported by the record, defendant cites to the court's statement that it had "read the Supreme Court opinion" in *Lewis I*, which contained prejudicial references to criminal conduct beyond the four robbery convictions to which he stipulated at the penalty trial. (See *Lewis I*, *supra*, 50 Cal.3d at pp. 279, 286–287.) From our review of the entire record and consideration of the court's comment in context, it is clear there was no improper consideration. The reference to having reviewed this court's opinion arose in response to defendant's motion for presentencing discovery. In explaining its reason for denying the request, the court quoted from the portion of our discussion limiting the remand to rehearing "on the basis of the record certified to this court." (*Id.* at p. 287.) At the hearing on the modification application, the court stated it had considered only the trial transcripts and certain exhibits submitted by the parties as the basis for the ruling; and we discern nothing to indicate otherwise. (Cf. *People v. Sanders* (1995) 11 Cal.4th 475, 566 [46 Cal.Rptr.2d 751, 905 P.2d 420].)

The trial court's characterization of defendant as "a violent and dangerous person prior to murdering Mr. Estell" does not alter our conclusion. The court

made this statement immediately after referring to defendant's four previous robbery convictions and to the fact that robbery is "defined as the taking of property by force or fear." From the context of the remarks, we discern that the court described defendant based on the elements of robbery and not on a consideration of any matters outside the trial record.

### C. Request for an Evidentiary Hearing for a Motion to Strike the Special Circumstance Finding

Prior to the hearing on his modification application, defendant moved for an evidentiary hearing for a motion to strike the jury's special circumstance finding. The trial court declined to entertain the motion as beyond the scope of this court's remand directive.

The court properly refused to consider defendant's request. The decision in *Lewis I* specified that the matter was returned to the trial court for the limited purpose of a rehearing on the question of penalty modification (see *Lewis I, supra*, 50 Cal.3d at p. 287), and the dispositional order expressly stated that "the cause is remanded to the trial court for the limited purpose of redetermining defendant's application for modification of the verdict in accordance with this opinion." (*Id.* at p. 292.) Reading these two portions of the opinion together, it is clear we did not contemplate any further or other proceedings. (Cf. *People v. Sheldon* (1994) 7 Cal.4th 1136, 1141–1142 [31 Cal.Rptr.2d 368, 875 P.2d 83].) This limitation is consistent with the generally applicable rule that "[t]he order of the appellate court as stated in the remittitur, 'is decisive of the character of the judgment to which the appellant is entitled.' " (*Hampton v. Superior Court* (1952) 38 Cal.2d 652, 656 [242 P.2d 1].) On remand, the lower court may act only within these express jurisdictional limits. (See generally 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 742 et seq.) Here, the trial court correctly interpreted our disposition and properly denied a hearing on the motion to strike as in excess of its authority.

Defendant cites *People v. Williams* (1981) 30 Cal.3d 470, 484 [179 Cal.Rptr. 443, 637 P.2d 1029], as authority for the motion to strike and raises numerous constitutional objections to the imposition of a procedural bar to preclude its consideration on the merits. In *Williams*, the court held—in the context of a life imprisonment without possibility of parole sentence—that the trial court retains discretion pursuant to section 1385 to strike a special circumstance finding and resentence the defendant accordingly. (*Williams,* at p. 490.) We expressly reserved the question whether our analysis "applies to a finding of special circumstances after the jury has returned a verdict of death." (*Id.* at p. 490, fn. 11.) Although section 1385.1 now divests the trial

court of such discretion in death cases for crimes committed on or after June 6, 1990 (see *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 298–299 [279 Cal.Rptr. 592, 807 P.2d 434]), this court has never definitively resolved the question for earlier cases. (See, e.g., *People v. Cooper* (1991) 53 Cal.3d 771, 849 [281 Cal.Rptr. 90, 809 P.2d 865].) We have noted, however, that "[i]t is at least arguable that section 190.4, subdivision (e), provides the sole remedy after a death verdict." (*Ibid.*)

■ Given the procedural posture of this case, we may continue to postpone final determination of the extent, if any, of the trial court's discretion in this regard. A modification application pursuant to section 190.4, subdivision (e), addresses a specific and limited aspect of a capital trial, the final act of the court prior to pronouncement of judgment and imposition of penalty. This presupposes the defendant has made any and all other pertinent motions. Thus, when a case is remanded solely for the purpose of rehearing on the application, no further opportunity is available for consideration of matters outside the scope of that narrow proceeding.

■ This determination does not deny equal protection because trial courts can, on remand, strike special circumstance and enhancement findings for noncapital defendants. Capital and noncapital defendants are not similarly situated. The penalty modification application, and the trial court's role in ruling on the application, are unique to capital proceedings. Whether in the first instance or on remand, the court is not resentencing the defendant, but reweighing the evidence to determine whether the jury's verdict is supported under the law and the evidence presented. (§ 190.4, subd. (e).) Noncapital defendants are in an entirely different position at resentencing, where the trial court reassesses the appropriate penalty. (See, e.g., *People v. Gutierrez* (1980) 109 Cal.App.3d 230, 233 [167 Cal.Rptr. 162].)

Defendant raises other constitutional objections to the refusal to hear his motion to strike based in part on the fact that trial counsel failed to make such a motion at the appropriate time and place prior to the original modification application. Assuming without deciding that a motion to strike would be tenable in this case, we reach the same conclusion that the trial court did not err. If counsel acted incompetently in his omission, defendant's remedy is by petition for writ of habeas corpus based on alleged ineffective assistance of counsel, not a motion that would have caused the trial court to exceed its jurisdiction on remand and distort the capital sentencing statutory scheme.

### D. *Request to Present Additional Mitigating Evidence*

Prior to the hearing on the modification application, defendant requested the opportunity to present additional evidence in mitigation in part because

his original defense counsel, Ron Slick, had allegedly failed to present a full picture of defendant's background. The trial court denied the request as beyond the scope of the proceedings contemplated by this court's opinion in *Lewis I.*

The court correctly understood that we remanded the matter solely for a rehearing on the modification application. (See *Lewis I, supra,* 50 Cal.3d at p. 292.) It is well established under our construction of section 190.4, subdivision (e)—including our decision in *Lewis I*—that "the court may review only evidence that was presented to the jury." (*People v. Brown, supra,* 6 Cal.4th at p. 337; see *People v. Ramos* (1997) 15 Cal.4th 1133, 1183–1184 [64 Cal.Rptr.2d 892, 938 P.2d 950].) Since it would have been improper to consider additional evidence, the court did not err in precluding defendant from presenting such evidence in the first instance.

██ Defendant responds that the court's ruling denied him the heightened reliability constitutionally mandated for imposition of the death penalty by foreclosing consideration of "any aspect of a defendant's character or record . . . that the defendant proffers as a basis for a sentence less than death." (*Lockett v. Ohio* (1978) 438 U.S. 586, 604 [57 L.Ed.2d 973, 98 S.Ct. 2954]; see also, e.g., *Mills v. Maryland* (1988) 486 U.S. 367, 373, 387 [100 L.Ed.2d 384, 108 S.Ct. 1860]; *Hitchcock v. Dugger* (1987) 481 U.S. 393, 398–399 [95 L.Ed.2d 347, 107 S.Ct. 1821].) This argument mischaracterizes the purpose and function of a modification application. (See *People v. Edwards, supra,* 54 Cal.3d at p. 847.) Defendant was never denied the opportunity to present mitigating evidence, including family background and his maturation in prison, at the statutorily designated time—the penalty phase—and place—before the jury. The modification application serves as a procedural mechanism for reweighing the determination made at that time and place, not as a substantive reevaluation. (See *People v. Berryman* (1993) 6 Cal.4th 1048, 1105, 1107 [25 Cal.Rptr.2d 867, 864 P.2d 40].) Even if, as defendant contends, his "original trial was a mockery" because "[t]his was a Ron Slick case," that fact does not establish any constitutional deficiency in the statutorily regulated procedures of a capital trial. Nor does it excuse enforcement of those procedures. If Attorney Slick rendered ineffective assistance by failing to present additional mitigating evidence, defendant may seek relief on habeas corpus. His remedy is not by challenge to the trial court's proper discharge of its obligation pursuant to section 190.4, subdivision (e).

Defendant's reliance on *Creech v. Arave* (9th Cir. 1991) 947 F.2d 873 does not alter this conclusion. In *Creech*, the Idaho Supreme Court vacated the defendant's original death sentence "because the trial judge failed to pronounce the sentence in the presence of the defendant as required by Idaho law." (*Id.* at p. 881.) At resentencing, the trial court refused to permit him the

"opportunity to introduce mitigating testimony relating to his conduct during the fourteen months between his sentencing and resentencing hearings." (*Ibid.*) The Ninth Circuit Court of Appeals reversed the second death sentence on the grounds that in an earlier decision, the state high court had "held that evidence of a defendant's good behavior and peaceful adjustment while in prison was mitigation evidence, [citation] and that the principles of *Lockett v. Ohio*[, *supra*,] 438 U.S. 586 . . . , *Eddings v. Oklahoma* [(1982)] 455 U.S. 104 [71 L.Ed.2d 1, 102 S.Ct. 869] . . . , and *Skipper v. South Carolina* [(1986)] 476 U.S. 1 [90 L.Ed.2d 1, 106 S.Ct. 1669] . . . , required that a defendant be allowed to offer such mitigating evidence at resentencing. [Citation.]" (*Creech*, at p. 881; see *Sivak v. State* (1986) 112 Idaho 197 [731 P.2d 192, 197].)

■ The present case differs materially with respect to both the nature of the remand and California's statutory and decisional law. Following *Lewis I*, the matter was remanded solely for rehearing on the automatic modification application. Pursuant to section 190.4, subdivision (e), the trial court does not resentence the defendant but rather considers whether to modify the death verdict. (See *People v. Espinoza, supra*, 3 Cal.4th at p. 830.) The express language of the statute provides that the court does so by "review[ing] the evidence" to determine "whether the jury's findings and verdicts that the aggravating circumstances outweigh the mitigating circumstances are contrary to law or the evidence presented." Thus, the court may not take into consideration any evidence not before the jury that returned the death verdict. (*Lewis I, supra*, 50 Cal.3d at p. 286.) Defendant offers no constitutional basis for disregarding this procedural limitation when the modification application is heard on remand rather than following the penalty verdict.

■ Defendant also asserts our determination denies him equal protection because noncapital defendants are entitled to have their probation reports updated prior to resentencing on remand (see *People v. Rojas* (1962) 57 Cal.2d 676, 682 [21 Cal.Rptr. 564, 371 P.2d 300]), which may include favorable information regarding their conduct in prison. This argument fails at its premise: capital and noncapital defendants are not similarly situated for purposes of sentencing. Unlike those convicted of noncapital crimes, the choice of a capital defendant's penalty is tried to a jury under a separately prescribed statutory scheme—of which section 190.4, subdivision (e), is a unique and integral part. Proceedings under section 190.4, subdivision (e), are not a resentencing but an application for modification of the death verdict as "contrary to the law or the evidence presented." Given this distinct purpose, defendant is properly restricted to the terms of the statutory scheme without violating his right to equal protection.

### E. Request for Presentencing Discovery

Defendant sought presentencing discovery on the ground that Attorney Slick never made a formal discovery motion and may not have obtained all relevant material from the prosecution. The trial court denied the request on the same basis it precluded defendant from presenting additional mitigating evidence. For the reasons explained above, we agree with this ruling: Since the court could not consider any additional evidence, further discovery would have served no useful purpose.

### F. Morality of the Death Penalty and Constitutionality of California's Death Penalty Statute

Defendant raises a series of challenges to the imposition of the death penalty, contending that capital punishment is immoral and that the death penalty statute is constitutionally flawed. Respondent counters that any attack on the death penalty generally or as applied to defendant is beyond the scope of the remand order, which specified: "Any subsequent appeal shall be limited to issues related solely to the modification application. [Citations.]" (*Lewis I, supra,* 50 Cal.3d at p. 292.) We agree that this language renders defendant's contentions noncognizable.

In *People v. Sheldon, supra,* 48 Cal.3d at page 963, the court remanded for rehearing under section 190.4, subdivision (e). On appeal from the reinstatement of the verdict, the defendant similarly attempted to attack the death penalty, but without success: "Any such substantive contentions are clearly beyond the limited scope of the present appeal. As our remand order states, 'Any subsequent appeal shall be limited to issues related to the modification application. [Citation.]' [Citations.]" (*People v. Sheldon, supra,* 7 Cal.4th at p. 1143.) Given the same remand order in this case, we find no basis for enlarging the scope of review. To the extent defendant has valid constitutional claims, he may raise them by petition for writ of habeas corpus. (See *In re Clark* (1993) 5 Cal.4th 750, 798 [21 Cal.Rptr.2d 509, 855 P.2d 729].)

### G. Delay in Carrying Out Execution

Lastly, defendant contends the delay between his original arrest and his ultimate execution—at least 15 years of which he attributes directly to the court system—constitutes cruel and unusual punishment and a denial of due process under the federal and state Constitutions. (See, e.g., *Lackey v. Texas* (1995) 514 U.S. 1045 [131 L.Ed.2d 304, 115 S.Ct. 1421] (mem. opn. of Stevens, J., on denial of cert.).) As explained in *People v. Anderson* (2001) 25 Cal.4th 543, 606 [106 Cal.Rptr.2d 575, 22 P.3d 347]: "[W]e have consistently concluded, both before and since *Lackey,* that delay inherent in the automatic

appeal process is not a basis for concluding that either the death penalty itself, or the process leading to·its execution, is cruel and unusual punishment. [Citations.]" Defendant presents no reason for reexamining this determination.

DISPOSITION

The judgment is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

Appellant's petition for a rehearing was denied August 11, 2004.